FORMELLA v CIBA-GEIGY CORPORATION

Docket No. 45393. Submitted June 12, 1980, at Detroit.—Decided
October 8, 1980. Leave to appeal applied for.

Helen Formella, an elderly woman, developed aplastic anemia
from her six-week use of Tandearil, a prescription drug manu-
factured by Ciba-Geigy Corporation. The drug had been pre-
scribed by her physician, Dr. Atalay M. Murguz, as treatment
for her osteoarthritis. Mrs. Formella, along with husband,
Anthony Formella, filed a complaint for damages which alleged
malpractice by Dr. Murguz by reason of his prescribing the
drug and alleged joint and several liability by Ciba-Geigy by
reason of its failure to adequately warn Dr. Murguz of the
dangers of the drug and its over promotion of the drug. On the
first day of trial in Macomb Circuit Court, Hunter D. Stair, J.,
plaintiffs entered into a settlement with Dr. Murguz, who was
thereupon dismissed from the action.

The proofs at trial showed that Dr. Murguz had read about
Tandearil in the Physician's Desk Reference manual (PDR) in
1965 when he first prescribed the drug, but that he had not
looked at the PDR or the quarterly supplements concerning
that drug between 1965 and the date of the Formella prescrip-
tion in 1973. Instead, he relied upon the statements of the Ciba-
Geigy men, who told him that Tandearil was a good drug "with
a safety margin". Dr. Murguz's testimony indicated that he
knew that the use of Tandearil entailed some dangers and that
Tandearil could cause blood dyscrasia if used for a lengthy
period of time; however, he ran no blood tests on Mrs. Formella
during the six weeks he had her on the drug. A medical expert
testified that he felt the warnings contained in the PDR and in
the package inserts were lengthy and inconsistent; however, he
did indicate that he did not prescribe Tandearil to people over
the age of 60 because the PDR and package insert information

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 63 Am Jur 2d, Products Liability §§ 22, 23, 197.
Promotional efforts directed toward prescribing physician as affect-
ing prescription drug manufacturer's liability for product-caused
injury. 94 ALR3d 1080.

warn against such use. The medical expert concluded that these warnings were adequate, if read.

Plaintiffs sought to have admitted into evidence Ciba-Geigy's marketing plans for Tandearil for the period of 1965 to 1973. The trial court ruled that evidence of those marketing plans was irrelevant and denied admission of that evidence. At the close of proofs, Ciba-Geigy moved for a directed verdict. The trial court granted the directed verdict in favor of Ciba-Geigy. Plaintiffs appeal, arguing that the trial court erred in refusing to admit the evidence concerning Ciba-Geigy's marketing plans and by granting the motion for a directed verdict. *Held:*

1. While plaintiffs' argument that evidence concerning the information given by the Ciba-Geigy detail men is relevant to the determination of the question of whether the drug manufacturer was negligent in failing to adequately inform the physician of the hazards of the drug is plausible in theory, the trial court did not err in excluding such evidence in this case. The testimony at trial clearly established that the negligence of Dr. Murguz in failing to read and heed the published warnings was the intervening, independent and sole proximate cause of Mrs. Formella's injuries. Even if Ciba-Geigy had been negligent in overpromoting the use of the drug through its detail men, that negligence was not the proximate cause of Mrs. Formella's injuries. Further, there was no evidence in the record showing that the drug was overpromoted; accordingly, plaintiffs failed to meet the burden of showing that the evidence of the marketing plans was relevant.

2. Since plaintiffs' cause of action was based upon the adequacy of Ciba-Geigy's warnings to physicians about the hazards of the drug, Ciba-Geigy's liability turns upon the question of whether it exercised reasonable care. While the adequacy of a warning is a question of fact which is properly a jury question, under the circumstances presented here the trial court properly directed a verdict in favor of defendant Ciba-Geigy, since there is no evidence that Ciba-Geigy failed to adequately inform physicians of the possible harmful effects. The only possible evidence which indicated that Ciba-Geigy may have been negligent in its duty to provide reasonable warnings came from the medical expert who also indicated that the warnings were adequate, if read. Further, since the prescribing physician failed to read the published warnings, any negligence by Ciba-Geigy to further emphasize the hazards was not a proximate cause of plaintiff's injuries.

Affirmed.

1. PRODUCTS LIABILITY — EVIDENCE — PRESCRIPTION DRUGS — OVER-
   PROMOTION — INJURIES — PROXIMATE CAUSE — RELEVANCY.

   Evidence of a drug manufacturer's marketing plans for a pre-
   scription drug is properly held to be inadmissible in a suit by a
   patient who had that drug prescribed and claimed that the
   drug was overpromoted by the manufacturer's detail men
   where the proofs at trial establish that the intervening, inde-
   pendent and sole proximate cause of the patient's injuries was
   the negligence of the physician prescribing the drug in failing
   to heed the published warnings supplied by the manufacturer
   and there is no evidence in the record that the drug was
   overpromoted, plaintiff having failed to meet the burden of
   showing that the evidence of the marketing plan was relevant.

2. PRODUCTS LIABILITY — DIRECTED VERDICT — PRESCRIPTION DRUGS
   — WARNINGS — OVERPROMOTION — PROXIMATE CAUSE —
   PROOFS.

   A directed verdict in favor of a drug manufacturer is properly
   granted in a suit based upon the claim that the plaintiff's
   injuries arose out of the failure of the manufacturer to provide
   adequate warnings to physicians and the overpromotion of the
   drug by the manufacturer where the proofs at trial: (1) estab-
   lish that the intervening, independent and sole proximate
   cause of the plaintiff's injuries resulted from the prescribing
   physician's failure to read and heed the published warnings
   concerning the use of the drug, (2) fail to establish that the
   drug was overpromoted, and (3) fail to establish that the
   manufacturer failed to adequately warn physicians of possible
   harmful effects.

*Barr & Walker,* for plaintiff.

*Harvey, Kruse & Westen, P.C.* (by *John A.
Kruse* and *James Sukkar),* for defendant.

Before: BASHARA, P.J., and D. C. RILEY and E. A.
QUINNELL,* JJ.

PER CURIAM. Plaintiffs brought an action against
defendants for injuries and damages sustained as a
result of Helen Formella's taking the drug Tan-
dearil. The complaint alleged malpractice on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

part of Dr. Murguz in prescribing the drug. It was further alleged that Ciba-Geigy, the manufacturer and distributor of Tandearil, was jointly and severally liable for plaintiff's injuries by failing to adequately warn Dr. Murguz of the dangers of the drug and by promoting its use.

After the first day of trial, plaintiffs entered into a settlement agreement with Dr. Murguz. He was dismissed from the action and no appeal has been taken therefrom.

Ciba-Geigy moved for a directed verdict of no cause of action at the close of plaintiffs' proofs. The motion was granted by the trial court and plaintiffs appeal.

At trial, Dr. Murguz stated that Helen Formella, an elderly woman, came to him on May 5, 1973, complaining of low back pain. He diagnosed osteoarthritis and prescribed Tandearil. She returned to Dr. Murguz's office in two weeks, at which time he continued the drug treatment. No blood tests were conducted at this time or at any time during her treatment.

On June 19, 1973, Mrs. Formella called Dr. Murguz to complain of multiple bruises and tiredness. He stated that he immediately suspected that Tandearil had caused her to develop a blood dyscrasia. He ordered her to stop taking the drug and to report to a hospital for tests. His supicions were confirmed. Mrs. Formella was extremely ill for several weeks from the aplastic anemia which had occurred as the direct result of taking Tandearil.

Plaintiffs first assign as error the trial court's ruling that evidence of Ciba-Geigy's 1965 to 1973 marketing plans for Tandearil was inadmissible. The court ruled that evidence of those plans was irrelevant. Plaintiffs allege that evidence of those plans was relevant in that such evidence displayed

the strategy of Ciba-Geigy in overpromoting the drug. Plaintiffs argue, in particular, that the information given to Dr. Murguz between 1965 and 1969 by "detail men", salespersons who call on doctors in order to promote the use of that company's drugs, is relevant in determining whether the drug company was negligent in failing to adequately warn him of the hazards of the drug.

Although we find plaintiffs' arguments plausible in theory, we hold that the trial court did not err in excluding the evidence in this case. Dr. Murguz testified that he read the Physician's Desk Reference manual (PDR) in part the first time that he prescribed Tandearil in 1965. After the first prescription, he no longer looked at the PDR or the quarterly supplements prior to prescribing the drug. Instead, he relied upon the statements of Ciba-Geigy detail men, who told him that Tandearil was a good drug "with a safety margin". He stated that if a drug is on the market and being "detailed", it must be safe.

It is obvious from Dr. Murguz's testimony that he knew Tandearil, like all prescription drugs, has some dangers that must be guarded against by the physician. He knew that taking Tandearil for a lengthy period of time could cause blood dyscrasia, yet he never conducted a blood test on Mrs. Formella or read the PDR. Indeed, he knew from the moment Mrs. Formella phoned him, describing the symptoms, that she had contracted the disease from taking Tandearil.

We conclude from his testimony that the negligence of Dr. Murguz is the intervening, independent and sole proximate cause of Mrs. Formella's injuries. Even if Ciba-Geigy had been negligent in overpromoting the use of the drug through its detail men, that negligence was not the proximate

cause of Mrs. Formella's injury. *Love v Wolf,* 226 Cal App 2d 378; 38 Cal Rptr 183, 196 (1964). Dr. Murguz simply chose to ignore what he knew: that the use of Tendearil over several weeks could cause blood dyscrasia.

In addition, our review of the record reveals that there is no evidence that the drug was overpromoted. Dr. Murguz stated he was told by detail men that the drug was good "with a safety margin". Although some of the early literature tends to play down the possible side effects of the drug and recommends its use for extended periods of time, all of the literature submitted to this Court includes a warning that blood tests should be frequently conducted on the patient. Therefore, plaintiffs have failed to meet the burden of showing that the evidence is relevant.

Finally, plaintiffs argue that the trial court erred in granting the motion for a directed verdict. They assert that the testimony of their expert witness, Dr. Lerman, was sufficient to allow the question of negligence to go to the jury. Dr. Lerman stated that he felt the PDR warning and package inserts were lengthy and inconsistent, thereby rendering them inadequate. He cited the example of the warning that the drug should not be given to persons who are senile as being contradictory with the later warning that the drug should not be used for over a week in persons over age 60. Dr. Lerman also testified that he did not prescribe the drug to people over age 60 because the PDR and package insert information warn against such use. He concluded that the warnings were adequate, if read.

The standard of review of directed verdicts is outlined in *Cody v Marcel Electric Co,* 71 Mich App 714, 717; 248 NW2d 663 (1976), as follows:

"Directed verdicts, particularly in negligence cases, are viewed with disfavor. When a fact question is presented upon which reasonable persons could reach differing conclusions, the trial judge may not take the question from the jury. In deciding whether the trial court erred in entering a directed verdict, we review all the evidence presented to determine whether a question of fact existed. In so doing, we view the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor. If the evidence viewed in this manner establishes a prima facie case, we must reverse the trial court's grant of a directed verdict. *Caldwell v Fox*, 394 Mich 401; 231 NW2d 46 (1975)."

Plaintiffs' cause of action against Ciba-Geigy is not based upon any defect in the drug but upon the failure of the drug company to adequately warn physicians of the hazards of the drug. When liability turns on the adequacy of a warning, the issue is one of reasonable care. *Smith v E R Squibb & Sons, Inc*, 405 Mich 79, 90; 273 NW2d 476 (1979). The adequacy of the warning is a question of fact, properly left to the jury. *Gutowski v M & R Plastic & Coating, Inc*, 60 Mich App 499, 506-508; 231 NW2d 456 (1975).

In the case at bar, we agree with the trial court's conclusion that there is no evidence that Ciba-Geigy failed to adequately warn physicians, through the package inserts, PDR and other publications, that the drug had possible harmful effects. The materials stated that blood tests should be conducted weekly for persons who were aged. The drug was contraindicated for persons with drug allergies, such as Mrs. Formella's allergy to penicillin. It was recommended that older people not take the drug for more than a week. Dr. Lerman's testimony, the only possible evidence presented that indicated Ciba-Geigy may have been negli-

gent, revealed that the warning was adequate, if read.

Furthermore, the fact Dr. Murguz failed to read the package inserts and PDR negates any possible negligence on the part of Ciba-Geigy in not emphasizing the hazards in those publications. Again, we find that Dr. Murguz's negligence is the intervening, independent and sole proximate cause of Mrs. Formella's illness.

Affirmed, costs to defendant.