MUILENBERG v THE UPJOHN COMPANY

Docket No. 50216. Submitted February 3, 1982, at Grand Rapids.—
Decided April 21, 1982. Leave to appeal applied for.

Plaintiff, Terry Muilenberg, and his father Marvin Muilenberg
who died before trial, brought an action against The Upjohn
Company for damages, alleging that plaintiff's injuries resulted
from his ingestion of a drug manufactured by Upjohn. Plaintiff
alleged that Upjohn failed to warn of the drug's side effects and
was negligent in the pretesting of the drug. The Kent Circuit
Court, John T. Letts, J., entered judgment on a jury verdict in
favor of plaintiff. Defendant appealed, alleging several errors.
*Held:*

1. Plaintiff's counsel, during rebuttal argument, improperly
referred to the denial of the defendant's motion for a directed
verdict, implying that the denial was proof of the defendant's
negligence. The trial court gave a jury instruction regarding

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 265.
    Propriety and prejudicial effect of counsel's argument or comment
    as to trial judge's refusal to direct verdict against him. 10 ALR3d
    1330.
[2] 75 Am Jur 2d, Trial § 708.
[3] 29 Am Jur 2d, Evidence § 275.
[4] 5 Am Jur 2d, Appeal and Error §§ 545, 553.
[5] 30 Am Jur 2d, Evidence §§ 931, 933.
    Letters to or from customers or suppliers as business records under
    statutes authorizing reception of business records in evidence. 68
    ALR3d 1069.
[6] 29 Am Jur 2d, Evidence § 249 *et seq.*
[7] 63 Am Jur 2d, Products Liability § 78.
[8] 57 Am Jur 2d, Negligence § 7.
    75 Am Jur 2d, Trial § 481 *et seq.*
[9] 57 Am Jur 2d, Negligence § 37.
[10] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 49.
    63 Am Jur 2d, Products Liability § 42 *et seq.*
    Products liability: strict liability in tort. 13 ALR3d 1057
    Manufacturer's or seller's duty to give warning regarding product
    as affecting his liability for product-caused injury. 76 ALR2d 9.

the improper argument but the instruction did not cure the potential prejudice to the defendant's case.

2. Defendant's claim that certain evidence was inadmissible as evidence of subsequent remedial measures was not preserved for review because the evidence was objected to at trial on different grounds.

3. A document which was a compilation of reports submitted to defendant by doctors, on a voluntary basis, regarding the side effects of the drug in question was erroneously admitted into evidence. The document was prepared after the plaintiff's illness and contained only one report of an incident which occurred prior to that time. The document did not qualify for admission into evidence under the business record exception to the hearsay rule because there was no showing of the time between the doctors' discoveries and when they were recorded and the document was not prepared "in the regular course of business" as that term is used in the court rule. Furthermore, except for the one incident reported, the document was irrelevant to the proof of the case.

4. Admission into evidence of certain reports on the effects of a related drug was not an abuse of the trial court's discretion. The evidence was relevant to show that the defendant was on notice of the possible side effects of the drug in question.

5. There was sufficient evidence presented to permit a jury finding that the plaintiff's injury could have been prevented if his doctor had been adequately warned. Therefore, the defendant's motion for a directed verdict was properly denied.

Remanded for a new trial.

1. TRIAL — ARGUMENT OF COUNSEL.

Generally, it is improper for counsel to highlight to the jury the fact that the opposing party's motion for a directed verdict has been denied.

2. TRIAL — ARGUMENT OF COUNSEL — CAUTIONARY INSTRUCTIONS.

The giving of a cautionary instruction to the jury following an improper argument of counsel does not preclude a grant of further relief from an unjust verdict if it is found that under all the circumstances the instruction may not have prevented the feared prejudicial impact of the argument.

3. EVIDENCE — NEGLIGENCE — SUBSEQUENT REMEDIAL MEASURES — RULES OF EVIDENCE.

Evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct in connection with the event giving rise to the action being litigated (MRE 407).

4. Aᴘᴘᴇᴀʟ — Pʀᴇꜱᴇʀᴠɪɴɢ Qᴜᴇꜱᴛɪᴏɴ.

An issue is not preserved for review where an objection as to that issue was taken in the trial court on different grounds from those raised on appeal.

5. Eᴠɪᴅᴇɴᴄᴇ — Hᴇᴀʀꜱᴀʏ — Bᴜꜱɪɴᴇꜱꜱ Rᴇᴄᴏʀᴅꜱ — Rᴜʟᴇꜱ ᴏꜰ Eᴠɪᴅᴇɴᴄᴇ.

A document prepared by a drug company which was essentially a compilation of reports submitted voluntarily by doctors regarding use by their patients of a particular drug was not admissible into evidence in a products liability case under the business records exception to the hearsay rule; the information in the document lacked the degree of trustworthiness which is accorded a record kept "in the regular course of business" as that term is used in the court rule governing the admission of such evidence (MRE 803[6]).

6. Eᴠɪᴅᴇɴᴄᴇ — Rᴇʟᴇᴠᴀɴᴛ Eᴠɪᴅᴇɴᴄᴇ — Rᴜʟᴇꜱ ᴏꜰ Eᴠɪᴅᴇɴᴄᴇ.

Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; the trial court has wide discretion in determining whether offered evidence is relevant and admissible and may exclude relevant evidence if its probative value is outweighed by the danger of prejudice, confusion of issues, or misleading the jury (MRE 401, 403).

7. Pʀᴏᴅᴜᴄᴛꜱ Lɪᴀʙɪʟɪᴛʏ — Bᴜʀᴅᴇɴ ᴏꜰ Pʀᴏᴏꜰ — Bʀᴇᴀᴄʜ ᴏꜰ Dᴜᴛʏ.

A plaintiff in a products liability case must prove that the defendant owed a duty to the plaintiff, that the duty was breached, and that the conduct complained of was the cause in fact of the plaintiff's injury.

8. Nᴇɢʟɪɢᴇɴᴄᴇ — Dɪʀᴇᴄᴛᴇᴅ Vᴇʀᴅɪᴄᴛꜱ.

Directed verdicts in negligence actions are disfavored; when deciding whether or not to grant a directed verdict the court must view the testimony in the light most favorable to the nonmoving party and draw the reasonable inferences therefrom which are in that party's favor.

9. Nᴇɢʟɪɢᴇɴᴄᴇ — Dᴜᴛʏ ᴛᴏ Wᴀʀɴ.

The liability of a defendant in a case involving the duty of the defendant to warn the plaintiff of dangers turns on the reasonableness of the care used to disseminate the warning information, which is a question of fact.

10. Pʀᴏᴅᴜᴄᴛꜱ Lɪᴀʙɪʟɪᴛʏ — Dᴜᴛʏ ᴛᴏ Wᴀʀɴ — Dʀᴜɢ Mᴀɴᴜꜰᴀᴄᴛᴜʀᴇʀꜱ.

A drug manufacturer has a continuing duty to warn the medical

profession of side effects of drugs and where a doctor is not adequately warned the manufacturer may in turn be liable to a patient for a breach of that duty; however, the patient must establish that the failure to warn the doctor was the proximate cause of the patient's injury.

*Macarthur & Cheatham, P.C., Thomas H. Bleakley, P.C.,* and *Gromek, Bendure & Thomas* (by *James G. Gross),* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel),* for defendant.

Before: ALLEN, P.J., and R. B. BURNS and J. H. GILLIS, JJ.

R. B. BURNS, J. A jury verdict of $750,000 was rendered in favor of plaintiff Terry Muilenberg[1] in this products liability action. The action stemmed from plaintiff's ingestion of a drug, Cleocin, produced and distributed by defendant Upjohn Company. The theories of the case were failure to warn of the drug's side effects and negligence by Upjohn in the pretesting of the drug.

On July 22, 1971, plaintiff went to Dr. Harrell, a dermatologist at the University of Michigan Medical Center, for treatment of acne. The drug Cleocin was prescribed for treatment. The label on the drug, at that time, did not indicate that colitis possibly was a side effect of the medication.

Plaintiff was instructed by Dr. Harrell to take the medication two times a day. Approximately three days after plaintiff started taking the drug he experienced bleeding and diarrhea. Prior to ingestion of the drug, plaintiff had complained of rectal bleeding. He consulted a doctor, who diagnosed the problem as hemorrhoids. At that point

---

[1] Plaintiff Marvin Muilenberg, Terry's father, died prior to trial.

plaintiff had not experienced the extreme stomach cramping and diarrhea which occurred while he took Cleocin.

Plaintiff was sickly, weakened from the diarrhea. Finally, on August 1, 1971, his family contacted their physician, Dr. Howie, who instructed plaintiff to discontinue using Cleocin. Later that same day plaintiff went to the emergency room of Blodgett Hospital. On August 9, 1971, he consulted Dr. Benjamin, who instructed plaintiff to check into the hospital. He remained in the hospital four weeks. When the colitis condition subsided, he was released from the hospital and recuperated at home an additional two weeks. He returned to the hospital in September, 1971, and in April, 1972, for blood transfusions, required because of the bloody diarrhea. After constant medical attention, in January, 1973, plaintiff underwent a colectomy and ileostomy to alleviate his condition of severe chronic ulcerative colitis.

Several issues are raised on appeal in this complex products liability case. First, the defendant claims prejudicial error occurred when plaintiff's counsel, before the jury, during the rebuttal argument, referred to the trial court's denial of defendant's motion for a directed verdict. Plaintiff's counsel's argument, defendant proposed, insinuated that the denial of the motion for a directed verdict was proof of defendant's negligence.

During rebuttal argument plaintiff's counsel addressed the jury as follows:

"That's not the only issue, of course, of the lawsuit, but it is one of the issues, and you must keep it in mind in making your determination.

"As a matter of fact, I suggest that you satisfy yourself on that issue before you move on to the other issues of the lawsuit, because without negligence, I

wouldn't be in court, Terry Muilenberg wouldn't be in court. That is a prerequisite to allow me to even argue before you now. If I had not proved at least for jury determination that the Upjohn Company was negligent, Mr. Knack would have been entitled to a directed verdict at the close of my proofs. He moved for it, and it was denied."

Plaintiff concedes that the argument was improper, but argues no reversible error occurred, especially where the court gave a cautionary instruction on the reference to the directed verdict motion. Further, plaintiff argues that the remark, if prejudicial, is not per se cause for reversal unless deliberately and continuously made.

The trial court instructed the jury:

"During the rebuttal argument of the plaintiff's counsel, Mr. Bleakley, he stated that unless they had shown that the defendant was negligent, he couldn't have argued that issue to the jury because there would have been a directed verdict, and he proceeded to say that Mr. Knack moved for a directed verdict and it was denied.

"As I indicated to you at the beginning of the trial and before that, there would be times when certain matters would be brought up regarding the law and that you would not be privy to that. In other words, you would be excused while we argued that, a particular motion, and that has occurred throughout all trials that have ever been held where the law is being argued. And in this instance, certainly there are motions made and the fact that they're granted or denied is of no import to you. It's—it's something that has to be determined, and it doesn't necessarily mean that the judge is right in whatever he does. It may be a motion on some facts.

"Now, you are the triers of the facts, and when the judge has a jury, he concerns himself with the law and not with the facts, only insofar as it's necessary to review those facts during the course of his instructions to you after argument.

"So, you shouldn't concern yourself with whatever decision the judge has made when you were not present, because it—it may—if you do, then it would certainly prejudice your—your remarks, so I would ask you to forget, if you possibly can, or disregard this statement made by Mr. Bleakley as to what occurred out of your presence, and—because such a statement is —is not for your deliberation. It's something that I had to make a—have to make a decision on, and I some—as I've indicated, sometimes the judge is overruled in his decision in the higher court, and sometimes he's sustained. So, for that reason, I would ask you to disregard the reference to a directed verdict.

"I hope that you'll take that. I know of no other way to put it to you than just that."

Generally, it is improper for counsel to highlight to the jury that the opposing party's motion for a directed verdict was denied. See *Robelen Piano Co v DiFonzo,* 53 Del 346; 169 A2d 240 (1961), *Sanchez v Stremel,* 95 Ariz 392; 391 P2d 557 (1964), *Daly v Pere Marquette R Co,* 197 Mich 340; 163 NW 883 (1917). In order to determine the prejudicial impact of the statement the substance of the curative instruction, where the trial court gave one, must be analyzed. In 10 ALR3d 1330, 1332, it is stated:

"Thus, under ordinary circumstances, and in the absence of corrective action by the trial judge *sufficient to obviate the effects of such an argument,* it is generally held that resort to such tactics by counsel prejudices the rights of the opposing party, necessitating reversal or a new trial." (Emphasis added.)

Upon close scrutiny of the instruction, we find that it did not obviate the prejudicial impact of the plaintiff's counsel's statement. In *Willett v Ford Motor Co,* 400 Mich 65; 253 NW2d 111 (1977), where the trial judge granted a new trial even though he

previously had given a cautionary instruction to the jury in reference to the argument of plaintiff's counsel, the Supreme Court made it clear that just any curative instruction would not be sufficient to eradicate improper arguments. The Court stated:

"The giving of a cautionary instruction does not preclude further relief from an unjust verdict if the trial judge, or reviewing court on appeal, finds that under all the circumstances the instruction may not have prevented the feared prejudicial impact. In granting a new trial for the plaintiff in *Lapasinskas v Quick,* 17 Mich App 733, 739; 170 NW2d 318 (1969), then-Judge LEVIN stated:

"'We have no way of knowing whether the defendants' injection of this issue influenced the jury or whether the trial judge's cautionary instruction in fact removed any effect adverse to plaintiff's action. See *Clark v Grand Trunk W R Co,* 367 Mich 396, 402 [116 NW2d 914] (1962); *cf. Felice v Weinman, supra* [372 Mich 278; 126 NW2d 107 (1964)].'" *Willett, supra,* 72.

Here, the Court, rather than negate the reference to the directed verdict, added credence to the insinuation that the judge believed there was evidence to support plaintiff's case. The instruction failed to advise the jury that the motion for a directed verdict had no bearing on the issue of defendant's negligence. Instead, the curative instruction focused on the fact that the judge had ruled on the law, and that was his province, not to be of concern to the jury since if his decision was erroneous the higher Court would reverse it. This curative instruction did not discount the impact of the plaintiff's statement but to the contrary may have endorsed the plaintiff's argument in the juror's minds. As stated in *Robelen Piano Co v DiFonzo, supra,* 361; 169 A2d at 248, where plaintiff's counsel argued that if there was not a case

they wouldn't be before the jury, we think the court should have been more positive in its instructions to the jury and should have admonished counsel as to the impropriety of the argument.

Since a general verdict was returned we have no way of knowing if the impact of the prejudicial remark was erased. See *Willett, supra.* On the face of the instruction, we cannot conclude that the potential prejudice to defendant's case from the comment was cured.

Next, defendant contests the admission of several exhibits into evidence. Defendant argues that letters transmitted between Upjohn and a doctor who conducted a study of the side effects of Cleocin for Upjohn should have been excluded pursuant to MRE 407, which guards against the admission into evidence of subsequent remedial measures.

During 1973-1974, more than two years after plaintiff's illness, Dr. Tedesco, Chief of Gastroenterology at the Medical College of Georgia, conducted a study to determine the causal connection between incidents of colitis and patients'. use of Cleocin. Dr. Tedesco was the impetus behind the study. He approached Upjohn and Upjohn agreed to fund the project.

MRE 407 provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as providing ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

At the trial court level defendant never objected

to the evidence on the ground that it constituted hearsay or was evidence of subsequent remedial measures, subject to be excluded by MRE 407. Instead, the defendant objected to the admission of the evidence on the ground that the results of the study were "irrelevant". Where an objection below is taken on different grounds from those raised on appeal, the issue is not preserved for review. *Marietta v Cliffs Ridge, Inc,* 385 Mich 364; 189 NW2d 208 (1971).

Even if the issue were preserved for appeal, we would hold the evidence admissible under the feasibility exception to MRE 407. The feasibility of utilizing the procedure of proctoscopy to examine patients using Cleocin during premarketing testing of the drug was at issue during part of the trial, albeit defendant ultimately conceded the dispute over feasibility.[2]

---

[2] The following exchange occurred at trial:

"*[Mr. Knack:]* The testimony also indicates this procedure of the proctoscope in the manner done would be feasible to be done in 1967, '68, and '69, indicating the purpose of the proof, of course, to show that if the Upjohn Company had wanted to, they could have run a study similar to his back in '67, '68, and '69, just as he did it in 1974.

"And I agree that that is proper and Mr. Bleakley is entitled to show that through this testimony and also through Dr. Tedesco, which I understand that he'll be reading tomorrow.

"The objection is to the two reports. Of course, there's a letter, short report to Upjohn Company, which is Exhibit Number 24, in November of '73. Then his report an article published in January 26th of 1974, he's going to mark Plaintiff's Exhibit 25, and that I believe the results of his study conducted four years after the marketing of the drug, three years after, almost three years after the injuries to Terry Muilenberg should not be permitted to be put in evidence because I don't think it's relevant what he found several years after the injury to Mr. Muilenberg.

\* \* \*

"What we're talking about is the state of the medical art as it was in 1974 *[sic]* when Mr. Muilenberg received his injury versus 1973 and '74 when Dr. Tedesco was doing the study.

"*Mr. Bleakley:* That's—

"*The Court:* I don't think there's a great deal of difference.

"*Mr. Bleakley:* Yeah, and that's precisely the issue, and Dr. Tedesco

Defendant next argues that the trial court erroneously admitted into evidence a compilation by Upjohn of drug experience reports that were received from physicians who had prescribed Cleocin. Defendant claims the information contained in the compilation was irrelevant and constituted hearsay. Plaintiff counters that the trial court properly ruled that the document was admissible under the business records exception to the hearsay rule. MRE 803(6).

When a new drug enters the market doctors are encouraged to submit their findings of the side effects stemming from the medication to the manufacturer of the drug. These reports are submitted on a voluntary basis. Some of these reports were included in a document assembled by Upjohn Company entitled "Cases Involving Terminal Event and Cleocin Usage". The document was not drafted until 1974, three years after plaintiff's injury. Moreover, it contained only one report of an incident which happened prior to plaintiff's injury. The document did have a coding system written in by Upjohn personnel. However, these symbols were only abbreviations to identify the unconfirmed reports contained in the document.

MRE 803(6), which controls the disposition of this issue, provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

has testified that this study was feasibly designed or could have been designed or should have been designed in 1967 through '69 prior to the marketing research. And I'm going to take the position at all times that had the study been done responsibly by the Upjohn Company that this is the results they would have seen.

"I've said it in my opening statement, it's no secret, and I think I have the burden of showing that, and I will address that burden, but I ——I can't possibly do it completely or as I would like to do it without having these papers in evidence."

* * *

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

The document in question does not satisfy the letter or spirit of MRE 803(6). The policy behind the business record exception was capsulized adeptly in *Central Fabricators, Inc v Big Dutchman Division of US Industries, Inc,* 398 Mich 352, 356-357; 247 NW2d 804 (1976):

"The exception to the hearsay rule for records made in the regular course of business

" 'is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the record-keeper in habits of precision, and because in actual experience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind.' McCormick's Handbook of the Law of Evidence (2d ed), § 306, p 720."

In *Central Fabricators* an interoffice memo relaying a telephone conversation between a corporate executive and a customer was excluded from evidence since the memo did not comport with the requirements of MRE 803(6). The record did not establish that such memos were made in the regular course of business or that the events attested to in the memo were recorded a reasonable time after the event.

The same problems confront us here. There is nothing to conclusively determine the time lapse between the doctor's discoveries and the recording of them.[3] Whether or not the contents of the document were recorded at or near the time of the reported event is left to speculation. Moreover, Upjohn did not keep a record of the reactions to the drug "in the regular course of business" as the term is used in the court rule. The company does not draft the reports. It is dependent on information from the doctors. The document was nothing more than a compilation of outside information which the defendant had received.

The reports doctors submitted can be analogized to information procured in a survey. Where surveys are submitted under the business records exception to prove the truth of the matter asserted, they routinely are excluded as being nothing more than a compilation of hearsay. *Pittsburgh Press Club v United States,* 579 F2d 751 (CA 3, 1978). Unless the techniques used in conducting the survey are established scientifically and the survey results are objective and representative of the pool surveyed, the survey lacks the guarantees of trustworthiness. Here, the doctors' reports were received and compiled on an ad hoc basis.

---

[3] This concern with timeliness recently was reiterated in *Mason v Chesapeake & O R Co,* 110 Mich App 76; 312 NW2d 167 (1981).

Aside from not being admissible under the business records exception, the document should have been excluded from evidence because it was irrelevant to the proof of the case. Except for one report of an illness included in the document, all the other reported maladies occurred after plaintiff's illness.

Drug experience reports and journal articles involving Lincocin, not Cleocin, were introduced into evidence by plaintiff. Defendant argues that this evidence was irrelevant and should have been excluded from trial.

The drug Cleocin was derived from Lincocin. Cleocin was developed to improve on the side effects associated with Lincocin, which included colitis. The reports on Lincocin were offered into evidence to establish that Upjohn was on notice that the risk of colitis could be associated with the ingestion of Cleocin.

MRE 401 defines relevant evidence as follows:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The trial judge has wide discretion in determining if evidence offered is relevant and therefore properly admissible into trial. The guidelines for determining when evidence is relevant are set forth in *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981), which involved a suit for fraud, malicious prosecution and intentional infliction of emotional distress. In *Drouillard, supra,* 622, this Court stated:

"Relevancy is determined by the trial court, whose exercise of discretion is to be affirmed unless an abuse is manifest. *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265 (1976). Relevant evidence is evidence tending to make the existence of any fact which is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. MRE 403."

We find that the trial judge did not abuse his discretion in admitting the information into evidence. Cleocin and Lincocin share common characteristics. There is an interrelationship between the two drug compounds. Therefore, the studies on Lincocin could be instructive on the propensities of Cleocin and, in turn, address the issue of notice.

Defendant raises one last issue on appeal. The trial judge, Upjohn argues, should have granted the motion for a directed verdict against plaintiff. This conclusion was warranted, defendant asserts, because plaintiff failed to proffer sufficient evidence that defendant's wrongdoing caused his injury.

In a products liability case the plaintiff is obligated to prove that there was a duty owed, the duty was breached and the conduct complained of was the cause in fact of the injury. Here, where the duty of defendant to warn plaintiff was controverted, plaintiff had the burden of proving that the harm he suffered was attributable to the defendant's failure to warn that colitis was a side effect of Cleocin. See *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979). Defendant argues that plaintiff failed to establish this causal connection as part of his prima facie case.

Directed verdicts in negligence actions are disfavored. *Cody v Marcel Electric Co,* 71 Mich App 714; 248 NW2d 663 (1976). In *Smith v E R Squibb & Sons, Inc,* 69 Mich App 375, 382; 245 NW2d 52 (1976), where the duty of a company to warn of dangerous propensities of drugs was litigated, this Court stated:

"It is the duty of the ethical drug manufacturer to warn the medical profession of any dangerous propensities of a drug which are known or should be known to the manufacturer. The sufficiency of the warning is a matter of reasonableness and as such, it is generally a question for the trier of fact." (Citations and footnotes omitted.)

The standard is that when deciding whether or not to grant a directed verdict the court must "view the testimony in the light most favorable to the plaintiff and draw the reasonable inferences therefrom which are in his favor". *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975).

The liability in a duty to warn case turns on the reasonableness of the care used to disseminate the information. This is a question of fact. See *Formella v Ciba-Geigy Corp,* 100 Mich App 649; 300 NW2d 356 (1980). Here, plaintiff secured the testimony of Doctors Tedesco, Angell and Harrell. In the estimation of these doctors, the warning was inadequate. Doctors testified that the pretesting procedures used on Cleocin could have been improved upon. Under these circumstances sufficient evidence was produced to allow a rational trier of fact to reasonably conclude that Dr. Harrell, who prescribed Cleocin, was influenced by the inadequate warning. Reasonable minds could differ as to whether Upjohn did use reasonable care in executing its duty to warn of the side effects of the drug,

the lack of which care allegedly caused Dr. Harrell to prescribe the drug without hesitation.

Defendant would have us conclude that no causal link between the allegedly inadequate warning and plaintiff's illness was established since no evidence was offered that, if a proper warning had been given, the product which caused the injury would have been used differently and that therefore the case should not have been submitted to the jury.

The drug manufacturer does have a continual duty to warn the medical profession of the side effects of drugs. *Smith v E R Squibb, supra.* Where a doctor is not adequately warned, the drug manufacturer may in turn be liable to the patient for a breach of duty, *Stanback v Parke, Davis & Co,* 502 F Supp 767 (WD Va, 1980), *McEwen v Ortho Pharmaceutical Corp,* 270 Or 375; 528 P2d 522 (1974). If a patient becomes ill from the drug it still must be established that the failure to warn the doctor of the drug's aftermath was the proximate cause of the patient's injury. *Stanback v Parke, Davis & Co, supra.* Here, the plaintiff does have the burden of proving that had Dr. Harrell been adequately warned he would have pursued a course of treatment to avoid or reduce injury. *McEwen v Ortho Pharmaceutical Corp, supra.*

Dr. Harrell indicated that he was dissatisfied with Lincocin, the drug from which Cleocin was derived. The patients to whom he prescribed Lincocin experienced adverse effects. He was prescribing Cleocin as an alternative to Lincocin because the Cleocin package inserts indicated it was less toxic and had fewer gastrointestinal side effects than Lincocin. Dr. Harrell was not forewarned about the danger of the particular side effects of Cleocin from which plaintiff allegedly suffered.

Therefore, the doctor had no reason to hesitate in prescribing Cleocin or to alert the plaintiff to contact him if the side effect of severe diarrhea was experienced from the drug. Therefore, there was sufficient evidence to permit the jury to find that if Dr. Harrell had been adequately warned this injury could have been avoided. The trial court properly denied defendant's motion for a directed verdict.

The case is remanded for a new trial, consistent with the findings of this opinion.