*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE L. ROSS,

        Plaintiff-Appellee,

UNPUBLISHED
March 14, 2019

v

SHANE TYLER DYMENT,

        Defendant/Cross-Defendant,

No. 341273
St. Clair Circuit Court
LC No. 16-001527-NF

and

AUTO-OWNERS INSURANCE COMPANY,

        Defendant/Cross-Plaintiff-
        Appellant.

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In this third-party no-fault action for uninsured motorist benefits, defendant/cross-plaintiff, Auto-Owners Insurance Company (defendant),[1] appeals as of right the trial court's judgment in favor of plaintiff, Michelle Ross, following a jury trial. Defendant contends on appeal that it is entitled to a new trial because plaintiff's trial counsel was permitted to make the improper and prejudicial assertion that, because defendant voluntarily paid plaintiff's first-party personal injury protection (PIP) benefits, defendant essentially admitted to the threshold injury in the third-party case. We disagree and affirm.

---

[1] Shane Tyler Dyment was also named as a defendant in the case, but is not a party to this appeal, and will be referred to by name throughout.

To preserve a claim of attorney misconduct in a civil case, a party must object to the conduct and request a curative instruction or move for a mistrial. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103; 330 NW2d 638 (1982). In this case, although defendant objected to the assertion that its decision to pay plaintiff's PIP benefits constituted any type of admission, defendant failed to request a curative instruction or move for a mistrial, and accordingly, the issue is not preserved. Notwithstanding this, the fact that a litigant failed to request a curative instruction or move for a mistrial "is not an absolute bar to review, for it does not preclude an appellate court from correcting substantial errors which were not preserved in the trial court." *Id*. at 100-101.

When articulating the standard of review for claims of attorney misconduct in civil cases, including a claim that an attorney made an improper or prejudicial argument at trial, this Court frequently quotes the following analysis from *Reetz*:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action. [*Id*. at 102-103.]

This Court has since clarified that, in civil cases involving unpreserved claims of attorney misconduct, reversal is warranted only where (1) the attorney's remarks "were so prejudicial as to have denied the party a fair trial," and (2) "any resulting prejudice could not have been cured by a curative instruction." *Badiee v Brighton Area Sch*, 265 Mich App 343, 373-374; 695 NW2d 521 (2005).

Defendant first contends that in this case, as in *Reetz*, plaintiff's counsel made repeated prejudicial comments that evidenced a deliberate attempt to deprive defendant of a fair trial. See *Reetz*, 416 Mich at 111-112. Defendant contends that plaintiff was repeatedly permitted to conflate the threshold-injury requirement of a first-party claim, an "accidental bodily injury," MCL 500.3105(1), with the threshold-injury requirement of a third-party claim, a "serious impairment of body function, or permanent serious disfigurement," MCL 500.3135(1). Our review of the record, however, did not yield an instance in which plaintiff's attorney conflated the two standards. Instead, plaintiff used the fact that defendant voluntarily paid first-party benefits to counter defendant's argument that plaintiff *never suffered an injury whatsoever from the automobile accident.*

The first time plaintiff raised the issue, during her opening statement, plaintiff's counsel noted that, by voluntarily paying PIP benefits, defendant had admitted that (1) plaintiff had been

injured, and (2) the injuries were related to the auto accident. Plaintiff never suggested that the same implied that her injuries were serious impairments of body function:

> *Plaintiff's Counsel*: The interesting thing, Auto Owners is [plaintiff's] first-party carrier. She made an application for first-party benefits after this accident. In that application she indicated that she couldn't work, where she worked and what she was paid, which I told you, and that she suffered injuries to her knees and aggravated her pre-existing back condition. Auto Owners then had her sign a medical authorization[] to release the medical records from her treating physician, Dr. Santa Ana, from her general practitioner, the chiropractor and others and reviewed those records. And what did Auto Owners—

> *Defense Counsel*: Your Honor, I'm going to object here. First party and what happened on that aspect has nothing to do with this uninsured motorist case. We're not here about medical bills and what's going on on that end of it. This is beyond what this case is about.

> *Plaintiff's Counsel*: Absolutely not. Their expert has said no injuries, but Auto Owners has paid her medical bills after reviewing her medical records, and has paid her lost wages, which they'd only be obligated to do if Auto Owners found that her injuries were the result of this automobile accident. That's an admission by Auto Owners, and that's why I'm bringing it in.

> *Defense Counsel*: No, your Honor. That's a different standard about payment of first-party medical bills in terms of related or not.

> *Plaintiff's Counsel*: No it's not.

> *Defense Counsel*: It's, it is a different standard. It's a different issue. First party is not a part of this case and it's prejudicial for him to even bring this up.

> *Plaintiff's Counsel*: Absolutely not. They have a doctor, your Honor, who said no injuries from this accident. So if there were no injuries[,] Auto Owners wouldn't be responsible to pay a dime.

> *The Court*: Well, at this point, this is just opening statements. These arguments of the attorneys are not evidence and you're not to consider them as such. We will deal with the facts as they come out during the course of the trial. You may proceed.

When defendant's payment of PIP benefits was then brought up through plaintiff's testimony, the exchange even more clearly evidenced that plaintiff was only referencing the PIP benefits in response to defendant's argument that plaintiff was unharmed in the accident. Again, plaintiff's counsel did not conflate the first-party threshold injury with the third-party threshold injury:

*Plaintiff's Counsel*: Now, after this accident did you file an application for first[-]party benefits with [defendant]?

*Plaintiff*: Yes, I did.

*Plaintiff's Counsel*: And did you at that point advise them that you were injured in this automobile accident?

*Plaintiff*: Yes, we did.

*Defense Counsel*: Your honor, again, this is beyond this case. It's not about first[-]party benefits or the standard there as opposed to a third-party automobile negligence case and whether she has a serious impairment. And this is very prejudicial.

*Plaintiff's Counsel*: Again, your Honor, the [d]efendant has hired a doctor who's testified that my client suffered no injuries in this automobile accident. Auto Owners paid the medical and they would only pay the medical if she was injured in the automobile accident. So it goes to their admission that they reviewed the medical records, they paid her medical expenses, they paid her wage loss, and they paid attendance [sic] care and replacement services. They wouldn't pay any of those things if it weren't an injury. And because their doctor is not, he hasn't testified, well, she had an injury and it got better, he's testified she had no injury. So, that's inconsistent with Auto Owners admission by paying all of her expenses for which they would not have to pay if she wasn't injured in the accident. So that's what it's being offered for, your Honor, is to prove that Auto Owners has already admitted she was injured in this accident contrary to the medical testimony that they paid for to come into this case.

*Defense Counsel*: Your Honor, this is about serious impairment. You get into standards and make this case a lot longer and confuse the jury with the jury instructions about first-party cases, what's reasonable and necessary treatment. Their responsibility to pay for reasonable treatment that they deem to be related, even if it doesn't meet the no[-]fault threshold.

*The Court*: Are you going to have a doctor come in and testify that she had no injuries in this accident?

*Defense Counsel*: Yeah, they're unrelated.

*The Court*: Then proceed.

*Plaintiff's Counsel*: Thank you, your Honor.

The next two times the PIP benefits were mentioned were in plaintiff's closing argument and rebuttal, during which, again, plaintiff's counsel did not conflate an "accidental bodily injury" with a "serious impairment of body function," and instead only used the PIP benefits to counter defendant's argument that plaintiff was not injured in the accident at all. Plaintiff never

actually conflated the threshold injuries for first-party and third-party claims, and as such, defendant has failed to establish under *Reetz* that an error occurred.

Defendant contends in the alternative that it is entitled to a new trial based upon the possibility that the jury was unduly influenced by a singular statement made during plaintiff's rebuttal argument. While initially contending that defendant's voluntary payment of PIP benefits constituted an admission that plaintiff was injured, plaintiff's counsel arguably went one step further in the rebuttal argument when he stated: "[I]t's an admission by them that she was injured in this accident, *and it's an admission that they owe her money* and they don't want to pay her any more money, that's the bottom line." In context, plaintiff's counsel likely was referring to defendant's decision to cease paying plaintiff's first-party benefits, and was not suggesting that defendant had admitted to a serious impairment of body function. Defendant nonetheless contends that the statement was so prejudicial that it alone necessitates a new trial.

Defendant relies on *Lasky v Baker*, 126 Mich App 524; 337 NW2d 561 (1983), and *Muilenberg v Upjohn Co*, 115 Mich App 316; 320 NW2d 358 (1982). In *Lasky*, a jury awarded the plaintiff $60,000 after she was struck by a vehicle negligently operated by the defendant, Ervin Baker. *Lasky*, 126 Mich App at 526-527. Although the jury found damages in the amount of $60,000, it also found that the plaintiff was 75% responsible for the accident, and thus the plaintiff's actual recovery was reduced to $15,000. *Id*. According to the plaintiff, Baker had been drinking, so the plaintiff also named as a defendant the owner of the bar that had served him, Helen Skiba, and contended that Skiba had served Baker alcohol while Baker was visibly intoxicated. *Id*. at 527-528. After Skiba was dismissed from the case on her motion for a directed verdict, the plaintiff contended that a reference to the dismissal by Baker's counsel during closing arguments prejudicially implied to the jury that the plaintiff's testimony as to Baker's intoxication lacked credibility. *Id*. at 527. Baker's counsel specifically stated:

> "I'd like to take you back to last Wednesday when we all first got together. We started going over this case. At that time [the plaintiff's counsel] stated that the Plaintiff would prove that [Baker] was intoxicated and he became intoxicated at [Skiba's] Bar. I submit to you that has not been proven. [Skiba] is no longer even sitting at the defense table." [*Id*. at 532.]

This Court agreed that the statement was prejudicial because it implied to the jury that, by virtue of the trial court granting Skiba's motion for a directed verdict, the trial court had discredited the plaintiff's testimony such that it had made "a judicial pronouncement that Baker was not intoxicated." *Id*. at 532. Despite the issue being unpreserved, this Court found that the improper remarks of Baker's counsel denied a fair trial to the plaintiff, and thus granted the plaintiff a new trial. *Id*. at 534.

In *Muilenberg*, a jury awarded the plaintiff $750,000 after the plaintiff ingested a drug manufactured by the defendant without the defendant having warned the plaintiff of the drug's side effects. *Muilenberg*, 115 Mich App at 319. The drug resulted in the plaintiff developing "severe chronic ulcerative colitis," which resulted in a four-week hospital stay, blood transfusions, a colectomy, and an ileostomy. *Id*. at 320. On appeal, the defendant claimed that the plaintiff's counsel made prejudicial statements during the plaintiff's rebuttal argument when

he referred to the trial court's denial of the defendant's motion for a directed verdict. *Id*. The plaintiff's counsel argued:

> "As a matter of fact, I suggest that you satisfy yourself on that issue before you move on to the other issues of the lawsuit, because without negligence, I wouldn't be in court, [the plaintiff] wouldn't be in court. That is a prerequisite to allow me to even argue before you now. If I had not proved at least for jury determination that the [defendant] was negligent, [defense counsel] would have been entitled to a directed verdict at the close of my proofs. He moved for it, and it was denied." [*Id*. at 320-321.]

Following the statement, the trial court gave a cautionary instruction, but this Court found that the instruction actually made the plaintiff's statement more problematic:

> The instruction failed to advise the jury that the motion for a directed verdict had no bearing on the issue of defendant's negligence. Instead, the curative instruction focused on the fact that the judge had ruled on the law, and that was his province, not to be of concern to the jury since if his decision was erroneous the higher Court would reverse it. This curative instruction did not discount the impact of the plaintiff's statement but to the contrary may have endorsed the plaintiff's argument in the juror's [sic] minds. [*Id*. at 323.]

Because the instruction did not cure the prejudicial comment made by the plaintiff, this Court concluded that the defendant was entitled to a new trial. *Id*. at 324, 333.

*Lasky* and *Muilenberg* are both distinguishable from the case at hand. Both of the statements in *Lasky* and *Muilenberg* involved insinuations that a trial court's ruling on a motion for a directed verdict amounted to some sort of judicial pronouncement on a finding of fact. *Lasky*, 126 Mich App at 532; *Muilenberg*, 115 Mich App at 320-321. In this case, however, (1) it is not clear that plaintiff was attempting to make an improper argument in the first place, and (2) the threat of prejudice from plaintiff's argument, were it improper, pales in comparison to the threat of prejudice from the statements made in *Lasky* and *Muilenberg*.

The fact that plaintiff was using the voluntary payment of her PIP benefits as evidence that she was generally injured in the accident—and not as proof that she sustained a serious impairment of body function—was abundantly clear from the previous instances in which the PIP benefits were raised. Furthermore, the jury was also explicitly instructed regarding plaintiff's burden to show a serious impairment of a body function or permanent serious disfigurement separate from and in addition to a showing that plaintiff was generally "injured" as a proximate result of Dyment's negligence. Additionally, the jury sat through four days of testimony regarding the injuries plaintiff claimed to have sustained from the accident, the seriousness of those injuries, and their impact on plaintiff's life. Mention of the fact that defendant voluntarily paid first-party benefits was miniscule in relation to the testimony from plaintiff, her husband, and her doctor, that the accident caused objectively manifested injuries and exacerbated others such that plaintiff's ability to lead her normal life was impaired. Finally, and importantly, there is no doubt that, to the extent the statement was improper, it could have

been cured by a curative instruction had defendant so requested.  See *Badiee*, 265 Mich App at 374.

       Affirmed.


                     /s/ Stephen L. Borrello
                     /s/ Brock A. Swartzle
                     /s/ Thomas C. Cameron