419 Mich. 686 (1984)
358 N.W.2d 873
In re CERTIFIED QUESTIONS
ODGERS
v.
ORTHO PHARMACEUTICAL CORPORATION
GRAINGER
v.
SANDOZ PHARMACEUTICALS
Docket Nos. 68958, 69340. (Calendar Nos. 20, 21).
Supreme Court of Michigan.
Argued May 5, 1983.
Decided December 10, 1984.
Philo, Atkinson, Steinberg, Walker & White (by Harry M. Philo, Linda Miller Atkinson, and Richard L. Steinberg) for plaintiff Odgers.
Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick (by Steven G. Silverman) for plaintiff Grainger.
Warner, Norcross & Judd (by Wallson G. Knack and Paul T. Sorensen) and Patterson, Belknap, Webb & Tyler (of counsel) for defendant Ortho Pharmaceutical Corporation.
Harvey, Kruse, Westen & Milan, P.C. (by Dave A. Lupo and Paul S. Koczkur), for defendant Sandoz Pharmaceuticals.
*691 Amici Curiae:
Baxter & Hammond (by Richard B. Baxter and Robert N. Hammond) for Michigan Defense Trial Counsel, Inc.
Thomas H. Bleakley, P.C. (by Thomas H. Bleakley, Richard J. Dimanin, and Brian J. McKeen), for Michigan Trial Lawyers Association.
Decided December 10, 1984. Rehearing denied in Odgers, 421 Mich 1202.
LEVIN, J.
The questions certified by the United States District Court present the issue whether a manufacturer of oral contraceptives or other prescription drugs has a duty to disclose the risks and potential side effects of the drugs directly to the patient. This Court has not addressed this issue, although it has, in obiter dictum, stated that the manufacturer does not ordinarily have such a duty.[1] That dictum, however, did not establish or represent a rule of law.[2] The issue remains undecided, and cannot be decided merely by applying existing case law.
We have concluded that by stating a rule of law, we might hamper, rather than foster, the sound development of Michigan law relating to the distribution of prescription drugs. Whether the manufacturer has a duty to warn patients directly can be determined only in the broader context of deciding whether and to what extent patients should be warned and whether other persons, such as physicians or pharmacists, should provide warnings. The allocation of the duty to warn patients is a public policy question involving the marketing system and economics of a major industry and the everyday practice of an essential profession. We believe that the Legislature is in a better position *692 to allocate those duties. If, because of legislative inaction, this Court is constrained to make the choices necessary for deciding this question, it would be better to do so in a case where the factual record is fully developed, and where the history of proceedings in the courts of this state provides more assurance than the records in these proceedings that the decision of the Court responds to all the issues implicated by the questions posed.
We respond to the questions certified by the district court that Michigan courts have announced no rule of law on those questions.[3]
I
In two separate actions filed in the United States District Court for the Eastern District of Michigan, the plaintiffs sought to hold prescription drug manufacturers liable for failing to disclose directly to the patient the risks and potential side effects associated with their products. Both United States district judges, applying what they believed was established Michigan law, held that the manufacturers had no duty to warn the plaintiffs directly. They then entered orders certifying closely related questions presenting that issue to this *693 Court for review. This Court originally declined to accept the certified questions. It then granted plaintiffs' motions for reconsideration, and agreed to respond to the certified questions.[4]
In Grainger v Sandoz Pharmaceuticals, Docket No. 79-40075 (ED Mich), plaintiff alleged that Linda Grainger's death was caused by a heart attack brought on by her use of Mellaril, a prescription drug manufactured by defendant and prescribed by her treating physician. Plaintiff claimed that Sandoz Pharmaceuticals had a duty to warn Linda Grainger directly about the dangers associated with the use of Mellaril. Sandoz Pharmaceuticals moved to strike allegations that it had a duty to warn Linda Grainger directly, contending that its duty was limited to warning the prescribing physician; the judge granted the motion.[5] After striking those allegations, the judge asked this Court to decide whether under Michigan law a prescription drug manufacturer has a duty to warn the patient directly.[6]
*694 In Odgers v Ortho Pharmaceutical Corp, Docket No. 78-70543 (ED Mich), Susan Odgers alleged that her partial paralysis was caused by a blood clot resulting from her use of Ortho-Novum, an oral contraceptive that Ortho Pharmaceutical Corporation had manufactured and that her physician had prescribed. Odgers alleged that Ortho failed adequately to warn her directly about the risks and potential side effects associated with the use of the contraceptive.
Ortho provided the physician with a package insert that contained warnings about the potential risks of using the contraceptive. The physician prescribed the drug only after conducting a physical examination of, and performing various tests on, Susan Odgers. Ortho also published and distributed to Odgers' physician a booklet discussing in layperson's language the proper use of the drug and the potential risks associated with that use, in compliance with a federal Food and Drug Administration regulation as it then was written, 21 CFR 310.501. The physician gave Odgers this brochure in accordance with that regulation, which provides that physicians may give the brochure to their patients in their discretion. In addition, the package containing the contraceptive had a warning label, written by the FDA, which stated that the most serious potential side effect of oral contraceptives was abnormal blood clotting and that the condition could be fatal. Odgers read both the pamphlet and the label.
The judge initially held that Ortho had a duty to warn Odgers rather than, or as well as, her physician about the risks associated with the use of Ortho-Novum. Specifically, the judge instructed *695 the jury that Ortho owed her the duty of reasonable care in the preparation of the booklet accompanying the drug that, under federal regulations, Ortho was required to distribute to physicians.[7] The jury found in favor of Susan Odgers, and awarded her $3.3 million in damages.
*696 The court then granted a new trial on the grounds that the instruction was erroneous under Michigan law, citing this Court's opinion in Smith v E R Squibb & Sons, Inc, 405 Mich 79, 88; 273 NW2d 476 (1979).[8] The judge first denied, but then granted, plaintiff's motion to present the issue to this Court for review.[9]
*697 II
In Odgers, and possibly in Grainger, the judge based his holding that a manufacturer of oral contraceptives and other prescription drugs has no duty under Michigan law to disclose the potential risks and side effects directly to the users of the drugs upon a statement in this Court's opinion in Smith v E R Squibb & Sons, Inc, supra. In Smith, the opinion of the Court included the statement: "[a] manufacturer of a prescription drug has a legal duty to warn the medical profession, not the patient, of any risks inherent in the use of the drug which the manufacturer knows or should know to exist." That statement was dictum, and did not establish or represent a rule of law.[10] Except for that sentence of dictum, the Court did not discuss whether a manufacturer's duty is to provide those warnings to the prescribing physician or directly to the patient.
As dictum, that statement does not establish Michigan law.[11] Although there are several decisions by the Court of Appeals on this issue, they too were based on the Smith dictum.[12]
The certified questions pose a choice between different systems for allocating between manufacturers, physicians, and pharmacists the duty to warn patients of the risks and potential side effects associated with the use of prescription drugs. *698 Although the certified questions are stated solely in terms of the manufacturer's duty, any decision of this Court implicates the obligations of members of professions who are involved in the distribution of prescription drugs but not represented in these proceedings. The responsibility of the learned intermediary is the basis of the learned intermediary doctrine. Yet, this Court has not had occasion to consider the obligation of learned intermediaries to warn regarding the risks of using prescription drugs. Under the circumstance that it has not defined their obligation, this Court is not prepared at this time to state a rule of law regarding the duty of prescription drug manufacturers that depends on some other person providing warnings. We conclude that the Court should not in these proceedings state a rule of law determining whether a prescription drug manufacturer has a duty to disclose prescription drug risks and potential side effects directly to the patient.
KAVANAGH, RYAN, and CAVANAGH, JJ., concurred with LEVIN, J.
BOYLE, J. (dissenting).
We write separately because while we agree with the majority that Michigan courts have announced no rule of law on the questions presented, we cannot agree that we should decline to answer them. The duty of a manufacturer to warn of dangers inherent in the use of its product is a creature of common law. Thus, rulings which relate to this duty are well within the appropriate province of this Court.
The questions presented are clear, the factual predicates for the issue are before us, and the subject matter is of such jurisprudential significance as to warrant a grant of leave to appeal had the cases originated in a state court, GCR 1963, *699 852.1(3). While there surely are instances where a question is of such importance to Michigan law that it might be inappropriate to answer except in the context of Michigan litigation, 5 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 797, Author's Comments No. 4, 1984 Supp, p 181, in our judgment this is not such an instance.
I
In these combined cases we are called upon to answer two questions certified to this Court from the United States District Court for the Eastern District of Michigan. GCR 1963, 797.2. Each of these questions involves the existence vel non of a duty on the part of a manufacturer of a prescription drug to warn the patient or ultimate user directly of dangers and potential side effects involved in the use of the drug.
We would hold that in addition to its duty to warn the prescribing physician, the manufacturer of an oral contraceptive has a duty to warn the user directly of known hazards, but the manufacturer of a therapeutic, diagnostic, or curative drug does not have this additional duty.
II
Odgers v Ortho Pharmaceutical Corp  Docket No. 78-70543
The relevant facts of this case are found in the factual statement which accompanied the certified question:
"1. Plaintiff has alleged in this action that defendant Ortho Pharmaceutical Corporation (Ortho), a manufacturer of the prescription oral contraceptive Ortho-Novum, failed to adequately warn her about the potential *700 risks inherent in the use of the drug. Ortho-Novum was prescribed for plaintiff by Dr. Joan Wake in November 1975. In accordance with its common-law duty, Ortho provided Dr. Wake with a package insert which contained warnings about the potential risks and side effects of using Ortho-Novum.
"2. Dr. Wake conducted a detailed physical examination of plaintiff and performed various tests before she prescribed the oral contraceptive. Dr. Wake also gave plaintiff a booklet published by Ortho entitled `After Your Doctor Prescribes Ortho-Novum'. Ortho published the booklet in compliance with a federal Food and Drug Administration regulation which requires all manufacturers of oral contraceptives to set forth certain specified information, in layman's language, in a brochure to be distributed to physicians, who may give it to patients in their discretion.
"3. Plaintiff read the booklet as well as the warning label on the package itself which stated that the most serious potential side effect of oral contraceptives was abnormal blood clotting and that that condition could be fatal. The warning label appearing on the package was written by the federal Food and Drug Administration; the federal regulations mandated that it appear only in the language specified.
"4. Plaintiff stopped using Ortho-Novum no later than mid-March 1976. On April 24, 1976, plaintiff became paralyzed below the waist. She has not recovered.
"5. Plaintiff claims that her injury was caused by a blood clot. She alleges that the clot resulted from her ingestion of Ortho-Novum. It is Ortho's position that plaintiff did not suffer from a blood clot and that her injury was unrelated to her use of Ortho-Novum.
"6. Oral contraceptives such as Ortho-Novum are not generally used for therapeutic purposes. The selection of oral contraceptives from among other methods of birth control is primarily based on informed choice rather than a physician's decision.
"7. This case was initially tried in June 1980. The Court instructed the jury that Ortho owed plaintiff the duty of reasonable care in the preparation of the booklet. The jury found for plaintiff. Thereafter the Court *701 granted a new trial on the grounds that the instruction was erroneous under Michigan law."
After an initial unsuccessful motion by the plaintiff to certify in federal court and denial of an interlocutory appeal, the Honorable Avern Cohn granted plaintiff's motion to certify on rehearing. On motion for reconsideration, this Court accepted the request to answer the certified question.
Pursuant to GCR 1963, 797.2, the following question was certified to this Court:
"Does the manufacturer of an oral contraceptive, which is a prescription drug, in addition to its duty under the common law of Michigan to warn physicians of any risks inherent in the use of the oral contraceptive which it knows or should know to exist, Smith v E R Squibb & Sons, 405 Mich 79 [273 NW2d 476] (1979), have a duty under the common law of Michigan to provide adequate warnings directly to persons using the oral contraceptives where (1) relevant federal regulations require that the manufacturer provide limited warnings to such persons on the label of the package and certain other warnings in a brochure made available to physicians for discretionary distribution to persons prescribed oral contraceptives and (2) issuance of the prescription is based on informed choice rather than solely physician decision?"
Grainger v Sandoz Pharmaceuticals  Docket No. 79-40075
Plaintiff brought this action as administrator of the estate of Linda Grainger. Plaintiff's decedent was alleged to have suffered a fatal adverse reaction to the drug Mellaril, which was manufactured by defendant and prescribed by a physician. One of plaintiff's allegations was that the defendant manufacturer had a duty to warn users of the drug directly of the dangers associated with taking it. *702 The federal trial court granted defendant's motion to strike this theory. However, the trial judge, the Honorable Stewart A. Newblatt, certified the following question to this Court:
"Under Michigan law, does a drug manufacturer have a legal duty to make reasonable efforts to directly warn the ultimate consumer of the possible existence, potential likelihood, warning signs, and potential severity of harmful side effects possibly incidental to taking a prescription drug alleged to be inherently dangerous, where the [Physicians' Desk Reference] states:
"`While there is no evidence at present that these changes are in any way precursors of any significant disturbance of cardiac rhythm, it should be noted that several sudden and unexpected deaths apparently due to cardiac arrest have occurred in patients previously showing characteristic electrocardiographic changes while taking the drug. The use of periodic electrocardiograms has been proposed but would appear to be of questionable value as a predictive device. Hypotension, rarely resulting in cardiac arrest'."
This Court accepted the request to answer the certified question and ordered the case to be argued and submitted together with Odgers.
III
Both certified questions require us to determine whether a manufacturer of a prescription drug has any duty under Michigan law to warn the user of the drug directly of the dangers involved in its use. Defendants in both cases cite Smith v E R Squibb & Sons, Inc, 405 Mich 79; 273 NW2d 476 (1979), as authority for the proposition that there is no such duty.
In Squibb, p 88, we stated:
*703 "A manufacturer of a prescription drug has a legal duty to warn the medical profession, not the patient, of any risks inherent in the use of the drug which the manufacturer knows or should know to exist. McEwen v Ortho Pharmaceutical Corp, 270 Or 375; 528 P2d 522 (1974); Sterling Drug, Inc v Yarrow, 408 F2d 978, 993 (CA 8, 1969); Love v Wolf, 226 Cal App 2d 378, 395; 38 Cal Rptr 183, 192-193 (1964)". (Emphasis added.)
However, the Squibb Court did not have the issue of a manufacturer's duty to warn the patient or user before it. That case involved allegations that defendant Squibb, as manufacturer of the drug, had failed to give adequate warnings of its dangerous propensities to the medical profession. Thus, we agree with Justice LEVIN that "[t]hat statement was dictum, and did not establish or represent a rule of law". Ante, p 697.
Squibb, therefore, does not control the issues in these cases. Nor does any other case decided by this Court.[1] We must proceed to answer the certified questions as matters of first impression.
IV
To reiterate, the certified questions present us with two very narrow issues. First, does the "learned intermediary" doctrine apply as a matter of Michigan law? Second, if it does apply otherwise, does the doctrine apply to manufacturers of oral contraceptives when the drug is prescribed for *704 routine birth control purposes?[2] To answer these questions, we examine the history and rationale of the learned intermediary doctrine to determine whether the rationale justifies its exclusive application.
A
It is an axiomatic principle of the law of product liability that the manufacturer of a product has a duty to warn the user of known dangers inherent in the use of the product. Comstock v General Motors Corp, 358 Mich 163; 99 NW2d 627 (1959); Prosser, Torts (4th ed), § 96, pp 646-647. The learned intermediary doctrine has been articulated as an exception to this general rule providing a special standard for manufacturers of prescription drugs. These manufacturers are required to warn only the prescribing physician,[3] who acts as a "learned intermediary" between manufacturer and consumer.
The learned intermediary doctrine was first articulated in Sterling Drug, Inc v Cornish, 370 F2d 82 (CA 8, 1966). The doctrine was soon adopted by many other jurisdictions.[4] The defendants in these *705 cases and amicus curiae Michigan Defense Trial Counsel correctly assert that other jurisdictions have been virtually unanimous in adopting the learned intermediary doctrine for all prescription drugs,[5] including oral contraceptives.[6]
*706 This Court is not unaware of its responsibility to examine authority from other jurisdictions in articulating rules of law for this state. The analysis and reasoning of our fellow jurists should not be ignored in this process. But a rule of law should not be blindly followed merely because it is widely accepted if the rationale supporting it does not apply to a particular set of circumstances. This is especially true when the rule of law is an exception to a well-recognized common-law basis for tort liability.
It is incumbent upon us, therefore, to examine carefully the rationale of the learned intermediary doctrine to determine whether it ought to apply to define completely the prescription drug manufacturer's duty in the cases under consideration.
B
Although the learned intermediary doctrine was first articulated in Sterling Drug, supra, later cases engaged in more detailed analysis of the exception and provided its rationale.
The doctrine has been justified on the basis that, because a physician must prescribe the drug, the patient places primary reliance upon the physician's judgment in selecting the drug and relies upon his or her advice in its use. Seley v G D Searle & Co, 67 Ohio St 2d 192, 203; 423 NE2d 831 (1981).
"Where a product is available only on prescription or through the services of a physician, the physician acts *707 as a `learned intermediary' between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician decides what facts should be told to the patient." Terhune v A H Robins Co, 90 Wash 2d 9, 14; 577 P2d 975 (1978).
The physician's concern for his or her patient extends beyond the cure of particular illnesses or injuries to the total health and physical well-being of the patient. Id.
The exception has also been justified by an assertion that direct manufacturer-consumer communication is difficult if not virtually impossible. Terhune, supra, p 14; Carmichael v Reitz, 17 Cal App 3d 958, 988-989; 95 Cal Rptr 381 (1971).
In addition, it has been argued that a duty to warn the user directly would cause undue interference with the relationship between doctor and patient. Dunkin v Syntex Laboratories, Inc, 443 F Supp 121, 123 (WD Tenn, 1977); Carmichael, supra, p 988.
"Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative." Reyes v Wyeth Laboratories, 498 F2d 1264, 1276 (CA 5, 1974).
Amicus curiae Michigan Defense Trial Counsel *708 argues that direct warnings to patients, if read, are likely to be read after the patient leaves the physician's office. Without sophisticated medical understanding, the patient might be frightened by warnings of potentially hazardous side effects and may not take the medicine, no matter how necessary.
"If the patient is disturbed about what it [the patient warning] contains, such as warnings that some patients may suffer serious side effects after short-term or long-term use, and these effects have not been fully explained by the physician, the patient may be in a quandary * * *. Some concerned patients may decide not to take the medication and also not to call the physician; they may wait for the next scheduled visit, or consult another physician. Failure to take the medication, or a substantial delay in following a course of treatment  either one without the physician's knowledge  could be severely detrimental to the patient's welfare.
"The most innocuous of drugs, and those generally considered safe, effective, and best for a given problem may, nevertheless, produce serious side effects in some patients. A description of risks in a package insert drafted for the self-protection of the drug company and the FDA could disturb even the most sophisticated patient. Placing this type of information in the hands of patients after the course of treatment had been agreed on with the physician would add an uncontrollable and often unknown factor to the treatment process. The patient might make a new judgment not to take the medication as directed." Curran, Package Inserts for Patients: Informed Consent in the 1980's, 305 N Eng Med J 1564 (1981). See also Carmichael, supra, p 988.
There is little doubt that the justifications for the learned intermediary doctrine raise serious concerns in terms of the interests of all concerned. Our analysis cannot stop at this point, however. We must proceed to examine precisely what interests *709 are being protected and what circumstances bring these interests into play.
C
Upon closer examination, it becomes clear that the justifications outlined above primarily explain why the physician should be warned of the potential hazards of prescription drugs. We are not asked in either of these cases to abrogate the manufacturer's duty to warn the physician, nor would we be inclined to do so given the unquestionable validity of the reasons advanced for imposing such a duty. Rather, we are asked in each case to impose an additional duty on prescription drug manufacturers to warn users of their products directly of potential hazards of use. This duty is one which is consistent with general principles of tort law.
Therefore, we must examine the justifications for the learned intermediary doctrine to determine which of them supports an exception to the general rule, i.e., which reasons justify the assertion that a prescription drug user should not receive a warning.
In the context of a therapeutic, diagnostic or curative prescription drug, we find compelling reasons to adopt the learned intermediary doctrine and hold that the manufacturer's duty to warn is satisfied by an adequate warning to the prescribing physician.[7] In such a context, it is true that the patient relies almost completely on the skill and *710 judgment of the physician in selecting an appropriate drug for the treatment of the patient's illness or injury. A warning to the patient under these circumstances could potentially cause undue interference with the doctor-patient relationship, cause patient confusion, and result in a hampering of the healing process. To this extent, the rationale for the learned intermediary doctrine supports a duty to warn only the prescribing physician.
Because Mellaril is a therapeutic prescription drug, in answer to the certified question in Grainger, we adopt the learned intermediary doctrine and hold that under Michigan law, there is no legal duty on the part of a manufacturer to warn the ultimate consumer directly of the potential hazards involved in the use of a therapeutic, diagnostic, or curative drug.
Plaintiff Odgers and amicus curiae Michigan Trial Lawyers Association assert that even if this Court finds no duty to warn the user of a therapeutic, diagnostic, or curative drug directly, it nonetheless ought to require such a warning from manufacturers of oral contraceptives. Plaintiff and amicus curiae argue, inter alia, that the initial determination of need for oral contraceptives is made not by the doctor, but by the patient.[8] Odgers' arguments require us to examine again the rationale underlying the learned intermediary doctrine to determine what justifications, if any, support the notion that the patient should not be warned directly by the manufacturer.[9] We are *711 convinced that in the case of the routine use of oral contraceptives for birth control purposes, there is no valid reason to make an exception to the general rule requiring that a warning of known hazards be communicated directly to the ultimate user or consumer of a product.
We repeat that our holding does not relieve the manufacturer of oral contraceptives of its duty to warn the prescribing physician of hazards associated with the drug. Oral contraceptives are prescription drugs, and the medical judgment of the physician is therefore necessarily implicated.
But the compelling reasons that persuaded us to limit the manufacturer's duty to a physician warning in connection with therapeutic, diagnostic, and curative drugs do not apply in the case of oral contraceptives. As Odgers has argued, the patient seeking a contraceptive does not rely completely on the physician's selection of an appropriate method or drug.[10] The focus with oral contraceptives is on patient choice. When used for contraceptive purposes, the drug has no therapeutic or healing properties. Consumer demand for oral contraceptives has prompted their use more often than has the doctor's advice. Note, Liability of Birth Control Pill Manufacturers, 23 Hastings L J 1526, 1527 (1972). The physician makes no assessment of medical need. Rather, the threshold question *712 of need for contraception has already been decided by the patient when she visits the physician. Patient choice plays a much more prominent role than in the case of drugs prescribed for the treatment of illness or injury. The role of patient choice in this process supports the need for a direct patient warning.
The marketing and resultant widespread use of oral contraceptives is distinguishable from that of most other prescription drugs in several respects. Consumer demand for the pill can be attributed in part to zealous marketing by manufacturers. Publications extolling the wonders of birth control pills have been addressed to the consuming public as well as the medical profession. Articles assuring women of the safety and effectiveness of the pill have appeared in many popular periodicals.[11] As a result of this publicity, patients eager to take the pill have specifically requested it as the most effective means of preventing unwanted pregnancies, and doctors have responded to these requests by prescribing it. These patients have not traditionally received the necessary information from their doctors concerning the risks associated with the use of birth control pills as opposed to other forms of contraception. A Gallup survey revealed that prior to the FDA required warnings to consumers,[12] two-thirds of the pill taking women had never been warned of possible hazards by their *713 physicians.[13] The medical profession's position with respect to the welfare of women who requested oral contraceptives is best characterized in this official American Medical Association statement issued in response to the FDA's proposed warnings to consumers:
"[t]he medical profession regards the pill, in most cases, as a convenience, rather than a traditional medication and hence the patient must bear her share or the legal and moral responsibility for taking it." Science News, March 14, 1970, quoted in 23 Hastings L J, supra, p 1532.
Thus, the manufacturer's warnings to the medical profession have not necessarily reached the consuming public. Oral contraception is only one of many types of birth control methods; warnings directed to the medical profession are not the most effective means of providing potential users of oral contraceptives with the information necessary to assess the benefits and risks of the various alternative means of birth control in order to make an informed and intelligent decision about whether to use or continue the use of oral contraceptives.[14]
The dangers of undue interference in the physician-patient relationship and the healing process which convinced us to limit the manufacturer's duty to warn in the context of therapeutic drugs also do not apply to oral contraceptives. The very nature of that relationship may be different in the case of oral contraceptives. A woman does not necessarily consult her physician every time she *714 decides to refill her prescription. The court that created the learned intermediary doctrine emphasized that
"[i]f the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided." Sterling Drug, supra, 370 F2d 85.
Because a woman may take oral contraceptives for extended periods without any medical assessment of side effects, the rationale of Sterling does not apply. The chance that injury will be prevented is greatly reduced. In addition, the urgency of disease or other life threatening condition simply does not exist. The consumer need not, of necessity, rely on the medical judgment of the physician in deciding whether to use the drug. If the patient reviews the warnings and decides not to take the oral contraceptive, no serious health danger arises.
The argument that direct warning from drug manufacturers to consumers is impossible is also substantially undercut with respect to oral contraceptives by current FDA regulations which require manufacturers of oral contraceptives to provide direct warnings to patients receiving them:
"The Commissioner of Food and Drugs concludes that the safe and effective use of oral contraceptive drug products requires that patients be fully informed of the benefits and risks involved in the use of these drugs. Information in lay language concerning effectiveness, contraindication, warnings, precautions, and adverse reactions shall be furnished to each patient receiving oral contraceptives. This information shall be given to the patient by the dispenser in the form of a brief summary of certain essential information included in each package dispensed to each patient, and in a longer, *715 detailed labeling piece in or accompanying each package dispensed to each patient." 21 CFR 310.501(a)(1).[15]
We also find unconvincing the argument of amicus Michigan Defense Trial Counsel that because the FDA must approve drug labeling, a damage action based upon inadequate warning poses unacceptable problems of federal-state conflict. In Ferebee v Chevron Chemical Co, 237 US App DC 164; 736 F2d 1529 (1984), the United States Court of Appeals for the District of Columbia Circuit noted that the Environmental Protection Agency's approval of a manufacturer's paraquat label as adequate for purposes of federal law does not preclude a state common-law action against the firm based upon a theory that the herbicide was inadequately labeled. The court noted that "[t]he purposes of [the Federal Insecticide, Fungicide, and Rodenticide Act, 7 USC 136 et seq.] and those of state tort law may be quite distinct." Id., p 175.[16]
We note also that the FDA itself in the preamble to the 1978 regulations recognized that:
"The Commissioner does not agree that the imposition of a requirement for patient labeling will necessarily affect adversely the standard of civil tort liability which is imposed on drug manufacturers or dispensers. Whether or not a corporation or individual is to be held liable in a given situation will depend upon the facts surrounding the manufacture, sale, and use of the drug *716 product, and on the nature of the injury. It will also depend on the applicable State law, which the Commissioner notes, can be adjusted by State Courts and Legislatures in light of facts presented by the use of patient labeling" 43 Fed Reg 4214 (Jan. 31, 1978) (emphasis added).
We are convinced that there remains no valid reason not to require a direct manufacturer-consumer warning in the case of oral contraceptives. In short, consumer demand and mass consumption not intended for the treatment of illness or injury convince us that oral contraceptives are unlike ordinary prescription drugs. These differences not only fail to support the proposition that a direct patient warning should not be required, but, in fact, provide compelling reasons that such a warning is necessary.
In answer to the certified question in Odgers, we hold that the manufacturer of an oral contraceptive has a duty to warn, not only the prescribing physician, but also the user, of potential hazards associated with use of the drug.
D
Amicus Michigan Defense Trial Counsel presents several policy arguments in urging us not to impose the additional duty on manufacturers of prescription drugs to warn users directly. We have responded to some of these concerns in our previous discussion.
Amicus argues that the requirement of an additional warning will increase the costs of prescription drugs which must be born ultimately by those who are injured or ill and who are likely, in many cases, to be least able to absorb an additional financial burden. We note that our decision in these cases does not require additional warnings *717 by manufacturers in connection with therapeutic drugs. If amicus is correct, our holding here will result in increased costs to users of oral contraceptives.[17] But this factor has never been determinative in assessing the right of an individual plaintiff to recover for injuries unreasonably caused by a defendant:
"[A] factor to which the courts have given weight in balancing the interests before them is the relative ability of the respective parties to bear the loss which must necessarily fall upon one or the other. This is not so much a matter of their respective wealth, although certainly juries, and sometimes judges, are not indisposed to favor the poor against the rich. Rather it is a matter of their capacity to absorb the loss or avoid it. The defendants in tort cases are to a large extent public utilities, industrial corporations, commercial enterprises, automobile owners, and others who by means of rates, prices, taxes or insurance are best able to distribute to the public at large the risks and losses which are inevitable in a complex civilization. Rather than leave the loss on the shoulders of the individual plaintiff, who may be ruined by it, the courts have tended to find reasons to shift it to the defendants". Prosser, supra, § 4, p 22.
Finally, amicus argues that creation of a new duty to warn the patient directly might effectively relieve a physician of the responsibility to obtain a patient's informed consent to drug therapy.[18] Amicus curiae offers us no hard evidence to support this assertion, and we are convinced that it is not much more than speculation. Our holding today does not affect any basis for a physician's legal liability to his or her patient. We are not persuaded *718 that physicians will risk personal liability by relying on a drug manufacturer's warning.
V
In conclusion, we would hold that a manufacturer of a prescription drug has a duty to warn the prescribing physician of known hazards associated with the use of the drug. We would also hold that a manufacturer of oral contraceptives has a duty to provide such a warning directly to the user of the drug. However, a manufacturer of a therapeutic, diagnostic, or curative prescription drug, including oral contraceptives prescribed for such purposes, has no duty to warn the user directly, and need only warn the prescribing physician. The rationale of the learned intermediary doctrine supplies valid and important reasons in support of this rule.
The certified questions in these cases should be answered accordingly.
WILLIAMS, C.J., and BRICKLEY, J., concurred with BOYLE, J.
NOTES
[1] See part II.
[2] See part II.
[3] This Court recognizes that the Court of Appeals may, because litigants may appeal as of right to that Court (GCR 1963, 806[1]), be called upon to determine whether a manufacturer of prescription drugs has a duty to warn directly persons for whom drugs are prescribed in a case involving only a patient and a manufacturer. This Court nevertheless has discretion in deciding whether to grant leave to appeal and determine the relevant duties in such a case. GCR 1963, 853(1). This Court is not yet prepared to state a rule of law that allocates the duties to warn in a proceeding where interests of persons not represented are implicated.

We do not wish to be understood as questioning the duty of the manufacturer to warn the medical community of the risks and potential side effects associated with prescription drugs. See Abel v Eli Lilly & Co, 418 Mich 311; 343 NW2d 164 (1984).
[4] See fns 6, 9.
[5] The parties have not provided this Court with the judge's statement of reasons for granting the motion to strike. The order granting the motion states that it was granted "for the reasons stated on the record". We have not been provided a transcript of the hearing. The judge may have applied what he thought to be Michigan law in light of this Court's opinion in Smith v E R Squibb & Sons, Inc, 405 Mich 79, 88; 273 NW2d 476 (1979).
[6] The court certified the following question for review pursuant to GCR 1963, 797.2:

"Under Michigan law, does a drug manufacturer have a legal duty to make reasonable efforts to directly warn the ultimate consumer of the possible existence, potential likelihood, warning signs, and potential severity of harmful side effects possibly incidental to taking a prescription drug alleged to be inherently dangerous, where the [Physicians' Desk Reference] states:
"`While there is no evidence at present that these changes are in any way precursors of any significant disturbance of cardiac rhythm, it should be noted that several sudden and unexpected deaths apparently due to cardiac arrest have occurred in patients previously showing characteristic electrocardiographic changes while taking the drug. The use of periodic electrocardiograms has been proposed but would appear to be of questionable value as a predictive device. Hypotension, rarely resulting in cardiac arrest.'" (Emphasis in the original.)
[7] Pursuant to GCR 1963, 797.2(b)(2), the United States District Court attached the following factual statement to its certification of the question to this Court:

"1. Plaintiff has alleged in this action that defendant Ortho Pharmaceutical Corporation (Ortho), a manufacturer of the prescription oral contraceptive Ortho-Novum, failed to adequately warn her about the potential risks inherent in the use of the drug. Ortho-Novum was prescribed for plaintiff by Dr. Joan Wake in November 1975. In accordance with its common-law duty, Ortho provided Dr. Wake with a package insert which contained warnings about the potential risks and side effects of using Ortho-Novum. (Exhibit A.)
"2. Dr. Wake conducted a detailed physical examination of plaintiff and performed various tests before she prescribed the oral contraceptive. Dr. Wake also gave plaintiff a booklet published by Ortho entitled `After Your Doctor Prescribes Ortho-Novum'. (Exhibit B.) Ortho published the booklet in compliance with a federal Food and Drug Administration regulation which requires all manufacturers of oral contraceptives to set forth certain specified information, in layman's language, in a brochure to be distributed to physicians, who may give it to patients in their discretion. 21 CFR 310.501. (Exhibit C.)
"3. Plaintiff read the booklet as well as the warning label on the package itself which stated that the most serious potential side effect of oral contraceptives was abnormal blood clotting and that that condition could be fatal. (Exhibit D.) The warning label appearing on the package was written by the federal Food and Drug Administration; the federal regulations mandated that it appear only in the language specified.
"4. Plaintiff stopped using Ortho-Novum no later than mid-March 1976. On April 24, 1976 plaintiff became paralyzed below the waist. She has not recovered.
"5. Plaintiff claims that her injury was caused by a blood clot. She alleges that the clot resulted from her ingestion of Ortho-Novum. It is Ortho's position that plaintiff did not suffer from a blood clot and that her injury was unrelated to her use of Ortho-Novum.
"6. Oral contraceptives such as Ortho-Novum are not generally used for therapeutic purposes. The selection of oral contraceptives from among other methods of birth control is primarily based on informed choice rather than a physician's decision.
"7. This case was initially tried in June 1980. The Court instructed the jury that Ortho owed plaintiff the duty of reasonable care in the preparation of the booklet. The jury found for plaintiff. Thereafter the Court granted a new trial on the grounds that the instruction was erroneous under Michigan law."
[8] See transcript of the October 30, 1980, hearing.
[9] The court certified the following question for review pursuant to GCR 1963, 797.2:

"Does the manufacturer of an oral contraceptive which is a prescription drug, in addition to its duty under the common law of Michigan to warn physicians of any risks inherent in the use of the oral contraceptive which it knows or should know to exist, Smith v E R Squibb & Sons, 405 Mich 79 (1979), have a duty under the common law of Michigan to provide adequate warnings directly to persons using the oral contraceptives where (1) relevant federal regulations require that the manufacturer provide limited warnings to such persons on the label of the package and certain other warnings in a brochure made available to physicians for discretionary distribution to persons prescribed oral contraceptives and (2) issuance of the prescription is based on informed choice rather than solely physician decision?"
Although this question presents the same basic issue presented by the question certified in Grainger, the facts in Odgers differ from those in Grainger in two significant respects: (1) unlike most prescription drugs, oral contraceptives such as Ortho-Novum are not generally used for therapeutic purposes; and (2) unlike the selection of most prescription drugs, the selection of oral contraceptives from among other methods of birth control is based primarily on patient choice rather than a physician's decision. See Editorial, The Pill's Grim (?) Progress, 206 Journal of American Medical Association 124 (September 30, 1968). Plaintiff argues that, because of these differences, a manufacturer of oral contraceptives should have a duty to warn patients directly even if manufacturers of other prescription drugs have no such duty. Other courts that have considered this issue have decided that there is no special duty to warn users of oral contraceptives directly. See, e.g., Seley v G D Searle & Co, 67 Ohio St 2d 192; 423 NE2d 831 (1981); Terhune v A H Robins Co, 90 Wash 2d 9, 14; 577 P2d 975 (1978).
Because we do not promulgate a rule of law, we do not consider whether these differences distinguish the duties of manufacturers of prescription oral contraceptives in particular from those of manufacturers of prescription drugs in general. Nevertheless, we do not intend to imply that under Michigan law there may be no distinction. That issue also remains unresolved.
[10] The only issue decided in Squibb was whether, "in the context of an alleged failure to provide adequate warnings, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements". Id., p 88.
[11] See Cree Coaches v Panel Suppliers, Inc, 384 Mich 646, 650; 186 NW2d 335 (1971); McNally v Wayne County Bd of Canvassers, 316 Mich 551, 556-558; 25 NW2d 613 (1946).
[12] Reeder v Hammond, 125 Mich App 223, 226-227; 336 NW2d 3 (1983); Dunn v Lederle Laboratories, 121 Mich App 73, 79; 328 NW2d 576 (1982). See also Muilenberg v Upjohn Co, 115 Mich App 316, 332; 320 NW2d 358 (1982); Formella v Ciba-Geigy Corp, 100 Mich App 649, 655-656; 300 NW2d 356 (1980).
[1] The Squibb dictum has been cited by the Court of Appeals for the rule that a manufacturer of a prescription drug has a duty to warn the medical profession but no duty to directly warn the user. See, e.g., Reeder v Hammond, 125 Mich App 223, 226-227; 336 NW2d 3 (1983), and Dunn v Lederle Laboratories, 121 Mich App 73, 79; 328 NW2d 576 (1982).
[2] It is important to note that we are only deciding whether a legal duty exists to warn users of a drug directly. The existence of a duty is only one element of a product liability cause of action based on a failure to warn. Cf. Moning v Alfono, 400 Mich 425, 437; 254 NW2d 759 (1977).
[3] Some jurisdictions have extended the scope of this duty beyond a warning to the prescribing physician. For example, in McEwen v Ortho Pharmaceutical Corp, 270 Or 375, 386-387; 528 P2d 522 (1974), the court held that a drug manufacturer also had a duty to warn the treating doctor. The certified questions and our holding here relate only to the manufacturer's duty to warn the user.
[4] See, e.g., Brochu v Ortho Pharmaceutical Corp, 642 F2d 652, 656 (CA 1, 1981); Lindsay v Ortho Pharmaceutical Corp, 637 F2d 87, 91-92 (CA 2, 1980); Timm v Upjohn Co, 624 F2d 536, 538 (CA 5, 1980), cert den 449 US 1112 (1981); Givens v Lederle, 556 F2d 1341, 1345 (CA 5, 1977); Reyes v Wyeth Laboratories, 498 F2d 1264, 1276 (CA 5, 1974), cert den 419 US 1096 (1974); Hoffman v Sterling Drug, Inc, 485 F2d 132, 141-142 (CA 3, 1973); Basko v Sterling Drug, Inc, 416 F2d 417, 426 (CA 2, 1969); Davis v Wyeth Laboratories, Inc, 399 F2d 121, 130 (CA 9, 1968); Fellows v USV Pharmaceutical Corp, 502 F Supp 297, 299 (D Md, 1980); Goodson v Searle Laboratories, 471 F Supp 546, 548 (D Conn, 1978); Dunkin v Syntex Laboratories, Inc, 443 F Supp 121, 123 (WD Tenn, 1977); Chambers v G D Searle & Co, 441 F Supp 377, 381 (D Md, 1975), aff'd per curiam 567 F2d 269 (CA 4, 1977); Pierluisi v E R Squibb & Sons, Inc, 440 F Supp 691, 694-696 (D PR, 1977); Yarrow v Sterling Drug, Inc, 263 F Supp 159, 162-163 (D SD, 1967), aff'd 408 F2d 978 (CA 8, 1969); Stottlemire v Cawood, 213 F Supp 897, 899 (D DC, 1963); Seley v G D Searle & Co, 67 Ohio St 2d 192, 202-203; 423 NE2d 831 (1981); Dyer v Best Pharmacal, 118 Ariz 465, 468-469; 577 P2d 1084 (1978); Carmichael v Reitz, 17 Cal App 3d 958, 988-989; 95 Cal Rptr 381 (1971); Mahr v G D Searle & Co, 72 Ill App 3d 540, 561; 390 NE2d 1214 (1979); Ortho Pharmaceutical Corp v Chapman, 180 Ind 33, 43; 388 NE2d 541 (1979); Mulder v Parke Davis & Co, 288 Minn 332, 336; 181 NW2d 882 (1970); Krug v Sterling Drug, Inc, 416 SW2d 143, 146-147 (Mo, 1967); Johnston v Upjohn Co, 442 SW2d 93, 95 (Mo App, 1969); Hines v St Joseph's Hospital, 86 NM 763, 765; 527 P2d 1075 (1974); Cunningham v Charles Pfizer & Co, 532 P2d 1377, 1381 (Okla, 1974); McEwen v Ortho Pharmaceutical Corp, 270 Or 375, 386-387; 528 P2d 522 (1974); Leibowitz v Ortho Pharmaceutical Corp, 224 Pa Super 418, 431; 307 A2d 449 (1973); Gravis v Parke Davis & Co, 502 SW2d 863, 870 (Tex Civ App, 1973); Terhune v A H Robins Co, 90 Wash 2d 9, 14; 577 P2d 975 (1978). See also McKee v Moore, 648 P2d 21, 24-25 (Okla, 1982); Calabrese v Trenton State College, 162 NJ Super 145, 153-154; 392 A2d 600 (1978), aff'd 82 NJ 321; 413 A2d 315 (1980).
[5] Some courts have made an exception for drugs administered in a mass immunization setting. See, e.g., Reyes v Wyeth Laboratories, Inc, 498 F2d 1264 (CA 5, 1974); Davis v Wyeth Laboratories, Inc, 399 F2d 121 (CA 9, 1968). Under these circumstances, where there is no individualized balancing by a physician prior to administration of the drug, the manufacturers have been held to have a duty to warn the patient directly. See further discussion in fn 9.
[6] Two reported cases have imposed a duty to warn directly users of oral contraceptives. In Seley v G D Searle & Co, 15 Ohio Op 3d 338 (1980), the Ohio Court of Appeals found that providing an informational booklet to doctors for distribution to patients constituted a "voluntary undertaking" by the manufacturer. Once having undertaken to warn, the manufacturer was held to a duty to make that warning adequate. However, Seley was reversed on appeal by the Ohio Supreme Court. 67 Ohio St 2d 192; 423 NE2d 831 (1981). See further discussion in fn 9.

In Lukaszewicz v Ortho Pharmaceutical Corp, 510 F Supp 961 (ED Wis, 1981), amended by order 532 F Supp 211 (ED Wis, 1981), the court held that because the FDA required a warning to users of oral contraceptives, a manufacturer's failure to provide that warning was negligence per se. In that case, it was alleged that the manufacturer had failed to comply with the applicable FDA regulation. There is no allegation of this type in either of the cases under consideration.
[7] Plaintiff Grainger urges us to find that as manufacturers of "inherently dangerous" products, prescription drug producers have a "nondelegable duty" to warn consumers directly. We agree with defendant Sandoz that this theory, which arose in the context of a principal-agent relationship, is inappropriate for application to a drug product liability case. See, e.g., Mulcahy v Argo Steel Construction Co, 4 Mich App 116, 127; 144 NW2d 614 (1966).
[8] It is important to note that our holding in connection with oral contraceptives does not apply to any therapeutic or curative use of these drugs. Nor does it apply when oral contraceptives are prescribed because a physician has determined that pregnancy is dangerous to the physical health of the patient. In addition, we express no opinion on the issue of whether this holding extends to other prescription methods of contraception.
[9] We decline to rest our holding on an analogy to the rule which has been articulated in the mass immunization cases. See fn 6. As indicated, we read those cases as turning on the fact that no physician is directly involved prior to administration of the drug. That is not the usual case when oral contraceptives are prescribed.

We also reject the suggestion of plaintiff Odgers that we find a "voluntary undertaking" on the facts of her case. See discussion of Seley, supra, fn 7. Because the manufacturer in Odgers was required by the FDA to furnish the informational booklet to physicians, we find that theory inapplicable here.
[10] To the extent the patient does rely on the physician's advice and risk assessment, that interest is satisfied by the manufacturer's duty to warn the prescribing physician.
[11] See Hellman, Doctor's View of Birth Control Pills, Redbook, April, 1969, p 132 (Dr. Louis M. Hellman was chairman of the FDA's Advisory Committee on Obstetrics and Gynecology); Langmyhr, How Safe Is the Pill? Parent's Magazine, October, 1967, p 58 (Dr. George Langmyhr was medical director of Planned Parenthood  World Population and formerly associated with Ortho Pharmaceutical Corporation, a birth control pill manufacturer).
[12] See fn 15 and accompanying text. The FDA has required warnings be included in or with the package dispensed to patients receiving oral contraceptives since 1970.
[13] Poll on the Pill, Newsweek, February 9, 1970, in Hearings on Present Status Competition in the Pharmaceutical Industry Before the Subcommittee on Monopoly of the Senate Committee on Small Business, 91st Cong, 2d Sess, part 16, p 6628 (1970).
[14] We note that we do not address the scope of the physician's duty to warn patients under the doctrine of informed consent.
[15] See also 21 CFR 310.501(a)(6) which provides that "[p]atient labeling for each oral contraceptive drug product shall be provided to the retailer by the manufacturer, packer, relabeler, or distributor".

Our holding of a direct duty to warn the oral contraceptive user does not rest on the existence of an FDA requirement to do so. We cite the regulation above only as evidence that manufacturer-consumer communication is feasible. We of course do not decide here the issue of the adequacy of the warnings actually given or required.
[16] See also Stevens v Parke Davis & Co, 9 Cal 3d 51; 107 Cal Rptr 45; 507 P2d 653 (1973).
[17] We note, however, that current FDA regulations already require a direct manufacturer-patient warning. 21 CFR 310.501(a)(1). See fn 16 and accompanying text.
[18] Whether such a duty exists as part of the physician's standard of care is beyond the scope of this opinion. See ante, p 697.