**Susan M. STEPHENS, Plaintiff,**

v.

**G.D. SEARLE & COMPANY, a foreign corporation, Defendant.**

**No. 83–CV–2946–DT.**

United States District Court,
E.D. Michigan, S.D.

Feb. 14, 1985.

Thomas H. Bleakley, P.C. by Brian J. McKeen, Detroit, Mich., for plaintiff.

Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C. by Richard A. Kitch, Allan G. Meganck, Detroit, Mich., for defendant.

## OPINION

GILMORE, District Judge.

This is a drug products liability case in which plaintiff alleges that her use of Ovulen 21 birth control pills manufactured by the defendant caused her a stroke on November 2, 1981. The complaint charges defendant with liability on six counts: negligence, negligence per se, breach of express warranty, breach of implied warranty, fraud and deceit, and strict liability.

In its motion for summary judgment, defendant raises six arguments, but the principal one relates to whether a manufacturer of prescription drugs is under any duty under Michigan law to put warnings on oral contraceptives to warn the patient directly of the risks and potential side effects associated with their use.

This issue was certified to the Supreme Court of Michigan by Judge Cohn of this court, and argued in the Supreme Court of Michigan on May 5, 1983.

On December 10, 1984, a divided Supreme Court stated that there was no rule of law in Michigan that would answer the question, and declined to decide the question or state a rule of law, holding that allocation of a duty to warn is a question of public policy involving the marketing system and economics of a major industry, and that the Legislature is in a better position to address the question than the Court. *In re Certified Questions, Odgers v. Ortho Pharmaceutical Corp., Grainger v. Sandoz Pharmaceuticals,* 419 Mich. 686, 358 N.W.2d 873 (1984).

A vigorous and intelligent dissent was filed by Justice Boyle, who was joined by Chief Justice Williams and Justice Brickley. In this dissent, Justice Boyle argued that the certified question should be answered, and answered in the following way:

> We would hold that in addition to its duty to warn the prescribing physician, the manufacturer of an oral contraceptive has a duty to warn the user directly of known hazards, but the manufacturer

of a therapeutic, diagnostic or curative drug does not have this additional duty. *Id.* at 699, 358 N.W.2d 873.

The minority opinion carefully analyzed the so-called "learned intermediary doctrine," which creates an exception to the usual duty to warn for the prescription drug situation on the rationale that the patient relies almost entirely on the expertise of the physician, who thus acts as a "learned intermediary" between the patient and the drug manufacturer. The dissent concluded that it did not apply to warnings in cases involving oral contraceptives:

> [T]he compelling reasons that persuaded us to limit the manufacturer's duty to a physician warning in connection with therapeutic, diagnostic and curative drugs do not apply in the case of oral contraceptives .... the patient seeking a contraceptive does not rely completely on the physician's selection of an appropriate method or drug. The focus with oral contraceptives is on patient choice. When used for contraceptive purposes, the drug has no therapeutic or healing properties. Consumer demand for oral contraceptives has prompted their use more often than has the doctor's advice.... The physician makes no assessment of medical need. Rather, the threshold question or need for contraception has already been decided by the patient when she visits the physician. Patient choice plays a much more prominent role than in the case of drugs prescribed for the treatment of illness or injury. The role of patient choice in this process supports the need for a direct patient warning.
> *Id.* at 711–12, 358 N.W.2d 873.

Justice Boyle also noted that oral contraceptives are distinguished from other prescription drugs by the zealous marketing practices used by the manufacturers, who aimed laudatory publicity directly at consumers. "As a result of this publicity, patients eager to take the pill have specifically requested it as the most effective means of preventing unwanted pregnancies, and doctors have responded to these

requests by prescribing it." *Id.* at 712, 358 N.W.2d 873.

The dissent noted as well that the nature of the physician-patient relationship may be different in the case of oral contraceptives than with other prescription drugs since a "woman does not necessarily consult her physician every time she decides to refill her prescription," and because "a woman may take oral contraceptives for extended periods without any medical assessment of side effects." *Id.* at 713–14, 358 N.W.2d 873.

The dissent stated in conclusion:

[W]e would hold that a manufacturer of a prescription drug has a duty to warn the prescribing physician of known hazards associated with the use of the drug. We would also hold that a manufacturer of oral contraceptives has a duty to provide such a warning directly to the user of the drug. However, a manufacturer of a therapeutic, diagnostic or curative prescription drug, including oral contraceptives prescribed for such purposes, has no duty to warn the user directly, and need only warn the prescribing physician. The rationale of the learned intermediary doctrine supplies valid and important reasons in support of this rule.

*Id.* at 718, 358 N.W.2d 873.

█ The fact that a majority of the Supreme Court of Michigan declined to decide this question does not prevent this Court from fulfilling its responsibility to rule on the issue. It would have been much better if a majority of the Supreme Court had answered what is essentially a common law question. Such questions are universally addressed to courts. However, its failure to do so makes it necessary for this Court to expound Michigan law.

Therefore, this Court is free to adopt the language of the minority opinion in deciding the issue. The Court does so, but only insofar as it applies to the issue in this case: whether the manufacturer of a prescription oral contraceptive has a duty under Michigan law to warn users directly of the risks and potential side effects of the drug when used for contraceptive purposes. Since the broader question of the duty of a manufacturer of any prescription drug directly to warn users of the risks of such drug was expressly left unresolved by a majority of the Supreme Court of Michigan,[1] this Court need not address that issue.

█ In this case, there is no question that the plaintiff sought and received her prescription for contraceptive purposes. Therefore, the motion for summary judgment on this issue is denied, and this Court holds that the manufacturer of prescription drugs is under a duty to warn the patient directly of the risks and side effects of oral contraceptives when prescribed for contraceptive purposes.

█ Another claim in the motion for summary judgment is that the warning provided by the defendant to the medical profession was adequate, as a matter of law. It is clear to this Court that the adequacy of a warning in a products liability case is a question for the jury. *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571 (5th Cir.1978); *Dougherty v. Hooker Chemical Corp.,* 540 F.2d 174 (3d Cir.1976). Therefore, this claim must be tried.

█ The next claim by defendant is that Michigan does not recognize a separate cause of action for breach of implied warranty in cases alleging failure to warn of the dangers of prescription drugs, citing *Smith v. E.R. Squibb & Co.,* 405 Mich. 79, 273 N.W.2d 476 (1979). Plaintiff correctly points out that what *Smith* held was only that in such cases negligence and breach of implied warranty involve identical evidence and require proof of the same elements. Defendant argues that the evidence here shows that it is not liable under the negligence theory, and thus cannot be liable for breach of implied warranty. Plaintiff reiterates that questions of fact remain as to the adequacy of defendant's warnings.

1. *Id.* at 696 n. 9, 358 N.W.2d 873.

Defendant also asserts that uncontradicted evidence that plaintiff read the warranty on the package insert and sought advice from her doctor shows there is no genuine issue of fact as to express warranties. Plaintiff, on the other hand, notes that under Section 2–313(1)(a) of the Uniform Commercial Code, M.C.L. 440.2313(1)(a):

Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

2–313(2) of the U.C.C., M.C.L. 440.2313(2), provides:

It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement proporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Plaintiff points out that statements made in the advertising and promotional literature that the drug was safe and fit for use constituted the requisite affirmations of fact.

Again, on this issue, questions of fact exist, and the Court will therefore deny the motion for summary judgment on this issue.

The next claim of the defendant is that federal law preempts any state action with respect to the labeling of oral contraceptives, and that the warnings and labeling it used complied with federal regulations, and any interpretation of state law that would require more extensive warnings is preempted by FDA regulations.

■ There appears, however, to be a factual dispute as to whether defendant's warnings did comply with federal guidelines. Further, the preemption argument is weak in the context of this case, which involves the application of state negligence doctrine. This is entirely different from a state enforcing a specific statute or administrative regulation contradicting federal statutes and regulations. In this case, the Court deals with the common law tort of negligence, and holds that FDA labeling regulations cannot preempt a state from enforcing its own negligence doctrine.

The next contention of the defendant is that no private right of action exists under the Food, Drug and Cosmetic Act. Defendant argues that Count II of the complaint, "negligence per se," is an attempt to plead a separate cause of action based solely on an alleged statutory violation. The plaintiff clarifies this by explaining that she cites the alleged violation only as evidence of negligence as in *Zeni v. Anderson*, 397 Mich. 117, 243 N.W.2d 270 (1976). Accordingly, there is no basis for summary judgment here.

■ Finally, the defendant claims that Michigan courts have rejected the use of strict liability as a separate theory of recovery in products liability cases, and, therefore, plaintiff's Count VI should be dismissed. On this point, the defendant is correct. In *Johnson v. Chrysler Corp.*, 74 Mich.App. 532, 254 N.W.2d 569 (1977), the Court stated:

If anything, the proofs that would be presented under a strict liability theory in a product case would overlap with the proofs that would be presented under an implied warranty theory. The addition of the third count adds only confusion, not substance.

And in *Lemire v. Garrard Drugs*, 95 Mich. App. 520, 523, 291 N.W.2d 103 (1980), the court stated: "[I]n Michigan, two theories of recovery are recognized in the areas of product liability: negligence and breach of implied warranty."

Plaintiff has pled both of the other theories, and therefore defendant's summary judgment as to Count VI and strict liability is granted.

An order embodying the findings of this opinion may be presented.